345 F.3d 103
 William BRODY, Plaintiff-Appellant,
William V. Minnich, William J. Minnich, Minic Custom Woodwork, Inc., and St. Luke's Pentecostal Church, Inc., Plaintiffs,
v.
VILLAGE OF PORT CHESTER, Defendant-Appellee,
Charles A. Gargano, in his official capacity as Chairman, President, and Chief Executive Officer of the New York Urban Development Corporation, d/b/a Empire State Development Corporation, Defendant.
 Docket No. 01-9219.
 United States Court of Appeals, Second Circuit.
 Argued: June 2, 2003.
 Decided: September 24, 2003.
 
 Dana Berliner, Institute for Justice, Washington, DC (William H. Mellor, Marni Soupcoff, Institute for Justice, on the brief, Martin Kaufman, Atlantic Legal Foundation, New York, NY, on the brief), for plaintiff-appellant.
 Alan D. Scheinkman, Epstein, Becker & Green, P.C., New York, NY (Darryll A. Buford, J. William Cook, on the brief), for defendant-appellee.
 Michael Rikon, Goldstein, Goldstein, Rikon & Gottlieb, P.C., New York, NY, for amicus curie Michael Rikon.
 Before: SACK and SOTOMAYOR, Circuit Judges, and DANIELS, District Judge.*
 SOTOMAYOR, Circuit Judge.
 
 
 1
 Plaintiff-appellant William Brody appeals from a judgment of the United States District Court for the Southern District of New York (Harold Baer, Jr., District Judge) granting summary judgment for defendant-appellee the Village of Port Chester ("the Village") on plaintiff's constitutional challenge to New York's Eminent Domain Procedure Law. See N.Y. Em. Dom. Proc. Law § 201, et seq. (Consol.2003) (hereinafter "EDPL"). Brody claims that the procedures used by the Village in condemning his commercial property for use in an urban redevelopment project denied him due process by failing to provide adequate notice about the timing or the significance of the public hearing, which was his sole opportunity to present arguments against the taking of his property. Additionally, Brody claims a failure of due process in the lack of individual notice that the Village had issued a "determination and findings," and thereby had triggered, under Article 2 of the EDPL, an exclusive, thirty-day period in which a property holder may appeal the decision to take his or her property. See Minnich v. Gargano, No. 00 Civ 7481 HB, 2001 WL 1111513 (S.D.N.Y. Sept.20, 2001). Because Brody was not aware of the issuance of the determination and findings, he argues that he was denied due process of the laws in violation of the Fourteenth Amendment as he was effectively denied access to his opportunity for judicial review of the condemnation decision. His property has since been condemned, the Village has formally taken title pursuant to Article 4 of the EDPL, and the property has been sold to the Village of Port Chester Industrial Development Agency ("Village IDA"), which has begun to demolish what Brody asserts are his buildings.
 
 
 2
 The district court held that Brody's claims were barred by res judicata based on its conclusion that he could have asserted them as counterclaims in the Article 4 proceeding by the Village to take title to his property. On appeal, Brody argues that the district court erred in granting summary judgment on res judicata grounds because EDPL § 208 allows such claims to be brought only in Article 2 proceedings and, therefore, these constitutional challenges could not have been asserted as counterclaims to the Village's Article 4 proceeding. The Village, in turn, has moved to dismiss the appeal, arguing as a threshold matter that Brody lacks standing to pursue his constitutional challenges. Further, the Village argues that Brody's claims are moot because he relinquished his claim to title by accepting an advance payment for the taking of his property, and because the property has since been sold to the Village IDA, which is not a party to this action, and demolition has begun.
 
 
 3
 We hold that Brody has standing to challenge the lack of individual notice about the publication of the determination and findings and that the failure to raise this constitutional challenge as a counterclaim in response to the Village's Article 4 proceeding cannot have res judicata effect because, as a matter of New York law, Brody could not have asserted his constitutional challenges in that proceeding. We also hold that Brody's claims are not moot. We therefore vacate the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.
 
 BACKGROUND
 I. The Condemnation Proceedings
 
 4
 Plaintiff William Brody is a commercial property owner in the Village of Port Chester, New York, who acquired the property at issue in this litigation in 1996. As the site was part of a long-planned urban development project, the Village and project developers later approached Brody about purchasing his property. Brody refused to sell.
 
 
 5
 Unwilling to take no for an answer, the Village sought to condemn the land under the procedures set out in the EDPL. Consistent with that statute, the Village held a public hearing on June 7, 1999 to review the intended public use to be served by the proposed redevelopment. Notice of the hearing was published pursuant to EDPL § 202(A), which requires the condemnor to publish notice of the hearing in newspapers a certain number of days before the hearing, but does not require individual notice to the affected property holders. Another tenant alerted Brody to the meeting, which Brody then attended in order to request that his property not be condemned. Brody was allowed four minutes to speak, but also was offered additional time to speak at the end of the hearing. Subsequent to the meeting, the Village issued and published a formal "determination and findings." Brody was never given individual notice of either the determination or its publication, as none is required under New York law. Consequently, Brody claims to have been unaware that the determination and findings were published or that he would have only thirty days after the publication of the determination and findings to challenge them in court. According to Brody, after the June 7 hearing, he "waited to see what the Village would decide to do." Although he "always intended to fight them if they tried to take [his] building," Brody "hoped they would realize that [he'd] done a lot of good for Port Chester and decide not to."
 
 
 6
 Shortly after this initial June 7 hearing, the Village discovered that the notice it had published advising the public about the initial hearing had not met all the requirements of the EDPL. The Village then published notice of a second public use hearing, which was held on July 6, 1999. It is undisputed that the second notice complied with EDPL § 202(A). Brody claims to have received no actual notice of the second hearing, and, consequently, he did not attend.
 
 
 7
 On July 18 and 19, 1999, the Village published a summary of its determination and findings in the local newspaper, as required by EDPL § 204, stating that the redevelopment project would serve to rehabilitate "certain blighted, substandard and unsanitary areas of the Village," as well as "enhance public access to the waterfront, protect and encourage water-dependent uses, promote the development of mixed use and retail commercial uses on the waterfront, remediate environmental problems, and have a positive impact on the existing and continued development of the Village waterfront and downtown business areas." Under the EDPL, this publication triggered the running of an exclusive thirty-day period in which to appeal the determination to the Appellate Division. See EDPL §§ 207, 208. There is no requirement in the EDPL, however, that the affected property owner be given individual notice of the determination and findings or their publication. See EDPL § 204(A).
 
 
 8
 Brody claims to have been unaware that the determination and findings were published on July 18 and 19, or that he had a limited right to appeal within thirty days of the publication. See EDPL § 207. According to Brody, this explains his failure to seek judicial review in an Article 2 proceeding under EDPL § 207. Brody claims that had he known the findings were published and the legal significance of that publication, he would have challenged the taking of his property within the thirty day window.
 
 
 9
 On April 26, 2000, the Village commenced court proceedings to take title to Brody's property under Article 4 of the EDPL. See EDPL § 402. On May 17, 2000, Brody responded to the Article 4 petition and filed, through counsel, a verified answer, which set forth three affirmative defenses: (1) the Village violated the United States and the New York Constitutions, as well as the EDPL, when it attempted to take his property without making an offer to compensate him; (2) the developer had not negotiated with him in good faith; and (3) the Village failed to ensure that adequate sums were in place to pay any condemnation award. The court ultimately granted the Village's petition to take title in October 2000, on the condition that the Village make Brody an offer for compensation within sixty days as required by Article 3 of the EDPL.
 
 II. The Federal Court Proceedings
 
 10
 On October 4, 2000, Brody filed the instant federal action, alleging that the EDPL violated the Due Process Clause of the Fourteenth Amendment, both facially and as applied to him. Specifically, Brody alleged that due process required the Village to provide those persons whose property was subject to condemnation with individual notice of the public use hearing, the Village's subsequent issuance of the determination and findings, and the thirty-day time limit on judicial challenges to the determination and findings.
 
 
 11
 The district court initially granted a preliminary injunction enjoining the Village from taking further steps in the condemnation process. Minnich v. Gargano, No. 00 Civ. 7481(HB), 2001 WL 46989 (S.D.N.Y. Jan.18, 2001). The Village took an interlocutory appeal of the injunction and, on August 8, 2001, while the cross-motions for summary judgment that are the subject of the present appeal were pending before the district court, a panel of this Court vacated the preliminary injunction, holding that Brody lacked standing to pursue his due process claims and that the district court had failed to balance the public interest against Brody's personal interests in enjoining the condemnation proceedings. Brody v. Village of Port Chester, 261 F.3d 288 (2d Cir.2001) ("Brody I"). The preliminary injunction was vacated and the case was remanded for "further proceedings consistent with [that] opinion." Id. at 291.
 
 
 12
 On September 20, 2001, the district court ruled that Brody had remedied the lack of standing but went on to grant summary judgment in favor of the Village, holding that Brody's claims were barred by res judicata because they could have been asserted as counterclaims in the action brought by the Village under EDPL § 402. Minnich, 2001 WL 1111513, at * 6.
 
 
 13
 III. Events Occurring After the Lifting of the Injunction
 
 
 14
 After the preliminary injunction was vacated on appeal, the Village went forward with the condemnation proceedings and, on August 28, 2001, acquired title to Brody's property pursuant to the EDPL. On September 14, 2001, the Village conveyed Brody's property and several other parcels to the developer, G & S Port Chester LLC ("G & S"). G & S then conveyed the property to the Village IDA. In December 2001, Hudson United Bank Co. was granted in excess of $11 million in mortgage liens over the entire development parcel, which includes Brody's property.
 
 
 15
 In May 2002, Brody and the Village entered into an agreement under Article 3 of the EDPL whereby Brody received an advance payment of $1.8 million as compensation for his property (the "Advance Payment Agreement"); the legal significance of this agreement is tangentially at issue in this appeal. Brody subsequently filed a claim for damages against the Village on July 11, 2002, seeking $5 million plus interest for the fair market value of the property. See EDPL § 512 (providing that the state supreme court is to determine the compensation due to a condemnee for damages as a result of the acquisition).[1]
 
 
 16
 In August 2003, Brody's last remaining tenant was evicted from the property. Work has begun on the project and several of the buildings have been demolished. We denied Brody's motion for stay of further demolition pending appeal because Brody failed to demonstrate irreparable harm and a likelihood of success on the merits of his public purpose challenge. See Order, No. 01-9219 (2d Cir. Aug. 14, 2003).
 
 DISCUSSION
 I. Introduction
 
 17
 The Village preliminarily urges us to dismiss Brody's appeal on the grounds that events that have occurred since the entry of judgment now render the appeal moot. Specifically, the Village argues that by entering into an agreement to accept the advance payment, Brody effectively has relinquished any right to dispute the Village's title to the property. It further argues that no relief is available to Brody because the property has been sold, and the current title holder — the Village IDA — is not a party to the appeal. In response, Brody contends that acceptance of the advance payment in no way compromises his ability to pursue his constitutional challenges to the EDPL, and that he can still seek return of his property because the Village IDA is in privity with the Village.
 
 
 18
 Although the Village's arguments are presented as a motion to dismiss the appeal, we nonetheless begin with the merits of the appeal because the absence of a purportedly necessary party is not jurisdictional, and we would have no occasion to reach the mootness issues now raised by the Village if the district court properly granted summary judgment on res judicata grounds. We begin with the issue of standing and hold that Brody does have standing to pursue his claim based on the lack of individual notice of publication. Contrary to the district court, we hold that this claim is not barred by res judicata. Only then do we turn to the Village's arguments relating to the Advance Payment Agreement and the absence of proper parties, all of which we reject in holding that the appeal is not moot. We conclude with guidance to the district court on remand as to the issues of who are necessary parties and what form of relief may be appropriate.
 
 II. Standard of review
 
 19
 We review the grant of a motion for summary judgment de novo. Mario v. P & C Food Markets, Inc., 313 F.3d 758, 763 (2d Cir.2002). All factual inferences must be drawn in favor of Brody as the non-moving party, and summary judgment is appropriate only if the Village shows that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 343 (2d Cir.1999).
 
 III. Standing
 
 20
 The Village argues that the district court erred in concluding that Brody had standing to assert his due process claims. It argues that our holding in Brody I that Brody lacked standing is binding under the law of the case doctrine and, alternatively, that the evidence relied on by the district court in finding standing was insufficient as a matter of law to demonstrate that Brody suffered any injury in fact.
 
 
 21
 "[I]n order to meet the minimum constitutional requirements for standing, a plaintiff must allege an `actual or threatened injury' to himself that is `fairly traceable' to the allegedly unlawful conduct of the defendant and is `likely to be redressed by the requested relief.'" Sullivan v. Syracuse Hous. Auth., 962 F.2d 1101, 1106 (2d Cir.1992) (quoting Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). As previously noted, in Brody I, this Court vacated the preliminary injunction because we found that Brody lacked standing to assert his claims as he had not alleged any injury in fact:
 
 
 22
 With regard to the public use hearings, Brody had actual notice of the first hearing, on June 7, 1999, and, indeed, attended and presented his views. At the second hearing, on July 6, 1999, the Village not only adopted by reference the proceedings of the June 7, 1999 hearing but also expressly considered the comments made therein. Brody has not in any way indicated that he would have raised additional objections at the July 6 hearing had he been provided with notice. Therefore Brody has suffered no injury in fact from not knowing of the July 6 hearing.
 
 
 23
 With regard to the Village's publication of its findings and determinations and the concomitant triggering of the thirty-day limit on appeals therefrom, Brody, while complaining of the lack of personal notice, has notably not alleged that he did not receive actual notice, a sine qua non of demonstrating injury. Consequently, he has alleged no injury in fact stemming from the lack of personal notice of the findings and determinations.
 
 
 24
 * * * * * *
 
 
 25
 Moreover, even if Brody had alleged that he had no such actual knowledge, it would not change the result.... [E]ven if Brody had had personal notice of the Village's findings and determinations and had challenged them in the Appellate Division, his objections could not conceivably have led to a rejection of the putative public purpose. Specifically, his objections, as stated at the June 7 hearing, were simply that while he "would like to see the project continue and go forward," the laundromat on his property was of substantial value to local residents and thus he would "like it to be considered that possibly where my buildings are, there might be a way that they might be able to remain." Such comments — directed not to challenging the public use but to persuading Village officials not to include his property in the project — were completely inapposite to the "extremely narrow" constitutional inquiry into whether the proposed taking served a public purpose. Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 240, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).
 
 
 26
 Brody I, 261 F.3d at 290.
 
 
 27
 When it ruled on the cross-motions for summary judgment that were pending at the time Brody I was decided, however, the district court found that Brody had standing to pursue these same claims:
 
 
 28
 Brody contends that his deposition testimony cured any standing problem since he made it clear that at the time he did not have an opportunity to fully express his views on the condemnation. When asked whether he intended to say anything at the hearing besides what is reflected in the written record, Brody replied, "Well, you really didn't have a chance to say what you wanted to say. So, yes, yes, sure." Although not crystal clear, I find that this allegation is sufficient to convey standing on this claim.
 
 
 29
 The Circuit also held that Brody lacked standing to challenge the Village's failure to provide him with actual notice of the determination and findings and of the 30 day limitation period in which to appeal because he failed to sufficiently allege lack of knowledge. However, in his declaration in support of this motion, Brody states unequivocally that he did not know that the determination and findings existed or that he had a right to appeal within 30 days. See Brody Decl. at ¶ 27, 28. Thus, Brody has also remedied this deficiency and, it seems clear, has standing to bring this claim.
 
 
 30
 Minnich, 2001 WL 1111513, at * 6.
 
 
 31
 Although the Village argues that the holding in Brody I was the law of the case, it concedes that this "Court may reconsider its prior holding on the basis of new evidence." Appellees Br. at 22. We have observed that the law of the case doctrine "is, at best, a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided." United States v. Martinez, 987 F.2d 920, 923 (2d Cir.1993) (citations and internal quotation marks omitted). "An issue decided on a prior appeal is not foreclosed with all the finality of res judicata when the case comes back to this court. Although the district court may not change our mind for us, we may ourselves do so." United States v. Fernandez, 506 F.2d 1200, 1203 (2d Cir.1974).
 
 
 32
 The Brody I panel's holding on standing was based only on the limited record before it on the motion for preliminary injunction. Now presented with a fuller record for purposes of the motion for summary judgment, we are free to revisit the issue of standing. See, e.g., Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 132 (2d Cir.1997) ("In view of our clearer understanding now, after remand, of the nature and scope of prior litigation by [the plaintiffs], it would serve no justifiable purpose to adhere blindly to a statement in [the first appeal] that was based on an incomplete picture of the relevant facts."); cf. DiLaura v. Power Auth. of New York, 982 F.2d 73, 77 (2d Cir.1992) ("The decision of both the trial and appellate court on whether to grant or deny a temporary injunction does not preclude the parties in any way from litigating the merits of the case." (internal quotations omitted)). Unencumbered by our prior determination of these issues, we now turn to the Village's argument that Brody has not alleged an injury in fact sufficient to support his claims as to the lack of notice of the July 6 meeting and the publication of the determination and findings.
 
 
 33
 The Village argues that because Brody nowhere states that he would have said anything at the second hearing, Brody cannot establish injury in fact from his lack of notice and failure to participate at that hearing.
 
 
 34
 In his deposition, Brody stated as follows:
 
 
 35
 Q: When you arrived at the [June 7] meeting, did you intend to speak?
 
 
 36
 A: Yes.
 
 
 37
 Q: Did you intend to say anything other than — beyond what's reflected in the written record?
 
 
 38
 A: Well, you really didn't have a chance to say what you wanted to say. So, yes, yes, sure.
 
 
 39
 Q: Well, are you saying, sir, that someone cut you off in the middle of your remarks?
 
 
 40
 A: Well, they kind of told you that you couldn't ask questions and you were limited to the amount of time you could speak, so it wasn't really like you could really get a feel for what is really going on and say what you want to say, you have three minutes?
 
 
 41
 * * * * * *
 
 
 42
 Q: Well, I notice, sir, at the end of the transcript on Page 95, you made a statement and then which was finished with, "That's it, thank you."
 
 
 43
 A: Yes.
 
 
 44
 Q: Did anyone prompt you to say, "That's it"?
 
 
 45
 A: No.
 
 
 46
 The district court recognized the lack of clarity in this statement, but inferred from this testimony, and specifically the italicized text, that Brody had alleged that there were remarks that went unmade at the June 7 meeting that, but for the lack of individual notice, he would have delivered at the July 6 meeting.
 
 
 47
 The Village argues that Brody cannot allege that he was injured by the lack of notice of the July 16 meeting because he, along with everyone else in attendance at the June 7 meeting, was given an opportunity at the end of the June 7 meeting "to add to their previous comments if they have new information or comments or suggestions that they'd like to bring forth." Since Brody did not speak at that time, so the Village's argument goes, he cannot allege that he suffered any injury in fact from being unaware of the July 6 meeting. We do not agree with the Village that because Brody was given a chance to say his piece at the close of the first meeting that it is now impossible for him to allege any injury arising from the lack of notice as to the second. Even if Brody had no more to say at the close of the first meeting, it is entirely possible that had he been aware of the second, he would have participated and have had information to add in response to remarks made by others during that second meeting.
 
 
 48
 Although we believe it was, therefore, theoretically possible for Brody to allege an injury arising out of the failure to receive notice of the July 6 meeting, he nevertheless still has not done so. Brody has not alleged what he would have said or responded to had he attended the July 6 meeting; indeed, he has not alleged that he would have said anything at all at the July 6 meeting. As a result, the record before us differs in no material way from that before this Court in Brody I. See Brody I, 261 F.3d at 290 ("Brody has not in any way indicated that he would have raised additional objections at the July 6 hearing had he been provided with notice. Therefore Brody has suffered no injury in fact from not knowing of the July 6 hearing."). Accordingly, we once again conclude that Brody lacks standing to challenge the lack of individual notice of the second hearing.
 
 
 49
 With respect to Brody's due process challenge based on the lack of notice of publication of the determination and findings and the lack of notice of the legal consequences of that publication, however, we find that Brody has cured the lack of evidentiary showing identified in Brody I. The district court relied on Brody's declaration submitted in support of his motion for summary judgment, in which Brody unambiguously states:
 
 
 50
 I did not see the determination and findings in the newspaper or anywhere else. I did not even know they existed.... If I had known about the determination and findings and that I had a right to appeal within 30 days, I would definitely have appealed them. I just didn't even know I had lost anything at that point, let alone that I could challenge it.
 
 
 51
 Brody Decl. ¶¶ 27, 28. Brody further states in his declaration that he "would like to challenge the declaration that [his] property is blighted, the delegation of power to Marina Project developers, and the constitutionality of the public purpose of condemning [his] property to give it to another private developer." In light of this testimony, we hold that the district court properly determined that Brody has standing to assert his due process claim.[2]
 
 
 52
 The Village further contends that we are bound by dicta in Brody I that suggests that Brody could not prevail because even if he had received actual notice of the publication of the determination and findings and had timely filed an appeal challenging the condemnation of his property, "his objections could not conceivably have led to a rejection of the putative public purpose." 261 F.3d at 290. Although Brody's likelihood of success on the merits was relevant to this Court in deciding whether the preliminary injunction was warranted, we do not read the decision as suggesting that this factor bears on whether Brody has standing.
 
 
 53
 In a procedural due process challenge, the question before the court is whether the process affording the plaintiff an opportunity to participate in governmental decision-making before being deprived of his liberty or property was adequate, not whether the government's decision to deprive the plaintiff of such liberty or property was ultimately correct. "The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing. To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits." Fuentes v. Shevin, 407 U.S. 67, 87, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (internal quotation marks and citation omitted); see also Kim v. Hurston, 182 F.3d 113, 119 (2d Cir.1999) ("This case is unusual in that the minimal hearing that procedural due process requires would have done [the plaintiff] little good since she could not have realistically contested the [outcome] .... Nevertheless, the procedural due process requirement of a statement of reasons must be observed.").
 
 
 54
 Thus, the Supreme Court held in Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), that a plaintiff is entitled to nominal damages upon a showing of a deprivation of procedural due process, even where the plaintiff fails to show that the outcome would have been different had due process been given. "[E]ven if [the plaintiffs] did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process. `It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing....'" Id. (quoting Fuentes, 407 U.S. at 87, 92 S.Ct. 1983). The Court, however, went on to add that compensatory damages would be appropriate only where the plaintiff could demonstrate that he had suffered some injury as a result of the denial of due process, id. at 266-67, 98 S.Ct. 1042 such as by showing that the outcome would have been different had process been afforded, or that he had suffered emotional distress directly from the denial of due process, rather than from the denial of the liberty or property interest.
 
 
 55
 Regardless of whether or not Brody will ultimately be entitled to a return of his property, he seeks declaratory relief that the EDPL is unconstitutional and, under Supreme Court precedent, is entitled at least to nominal damages for any denial of due process, if proven. Whether Brody has demonstrated that he would have prevailed in the appellate process had he been given notice, therefore, is beside the point for purposes of assessing his standing, and we agree with the district court that Brody has alleged sufficient facts to show that he suffered an injury in fact from being denied notice of the publication of the determination and findings and an opportunity to appeal. Thus, we hold that Brody has standing to assert this due process challenge.
 
 IV. Res Judicata
 
 56
 While expressing concern about the seriousness of Brody's constitutional challenges to the EDPL procedures, the district court nonetheless found that Brody's due process claims were barred by res judicata because it found that Brody could have brought these claims as defenses to the Village's suit under Article 4 of the EDPL to take title to his property. We hold that Brody's claims are not barred by res judicata because EDPL §§ 207 and 208 provide for exclusive jurisdiction in Article 2 proceedings over the types of claims Brody asserts in this lawsuit.
 
 
 57
 EDPL § 207 provides for judicial review of the condemnor's determination and findings in the appellate division of the New York supreme court by filing a petition for review within thirty days of publication of the determination and findings. Section 207(B) further provides that "[t]he jurisdiction of the appellate division of the supreme court shall be exclusive . . ." Section 207(C) limits the scope of review to whether: "(1) the proceeding was in conformity with the federal and state constitutions, (2) the proposed acquisition is within the condemnor's statutory jurisdiction or authority, (3) the condemnor's determination and findings were made in accordance with the procedures set forth in this article and with article eight of the environmental conservation law, and (4) a public use, benefit or purpose will be served by the proposed acquisition." EDPL § 207(C) (emphasis added). Section 208 reiterates the exclusive nature of the appellate division's jurisdiction:
 
 
 58
 Except as expressly set forth in section two hundred seven, and except for review by the court of appeals of an order or judgment of the appellate division of the supreme court as provided for therein, no court of this state shall have jurisdiction to hear and determine any matter, case or controversy concerning any matter which was or could have been determined in a proceeding under this article.
 
 
 59
 EDPL § 208 (emphasis added).
 
 
 60
 Article 4 of the EDPL, in contrast, creates a proceeding, distinct from an Article 2 challenge to the determination and findings, in which the condemnor petitions to acquire the title to the property. Once a petition has been filed by the condemnor under § 402, the condemnee is permitted to file an answer "which must contain specific denial of each material allegation of the petition controverted by him, or of any knowledge or information thereof, sufficient to form a belief, or a statement of new matter constituting a defense to the proceeding." EDPL § 402(B)(4). "[U]pon due proof of service of notice and upon filing of such petition and proof to [the supreme court's] satisfaction that the procedural requirements of this law have been met, the court shall direct the immediate filing and entry of the order granting the petition.... Upon the filing of the order and the acquisition map, the acquisition of the property shall be complete and title to such property shall then be vested in the condemnor." Id. § 402(B)(5).
 
 
 61
 "Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286-87 (2d Cir.2002). This bar will not apply, however, where "the initial forum did not have the power to award the full measure of relief sought in the later litigation." Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir.1986). Thus, the only issue before us is whether Brody could have asserted his constitutional challenges to the lack of notice in his § 402 answer. We answer this question in the negative because the allegedly barred claims are matters that "could have been determined" in a § 207 proceeding and, therefore, fall within the exclusive jurisdiction of the appellate division under § 208.
 
 
 62
 As the phrase "could have been determined" is used in § 208, it refers to the enumerated categories of claims listed in § 207(C), and therefore encompasses Brody's constitutional challenges to the lack of notice. See EDPL § 207(C)(1). The district court erred, however, in concluding that these claims could also have been asserted as counterclaims in the § 402 proceeding, in light of the unambiguous grant of exclusive jurisdiction in § 208.
 
 
 63
 In Metropolitan Transportation Authority v. Pinelawn Cemetery, 522 N.Y.S.2d 586, 588 (2d Dept. 1987), cited by the district court and relied on by the Village on appeal, the court held that the defendant was not entitled to raise defenses in an Article 4 proceeding that could have been raised in an Article 2 proceeding:
 
 
 64
 Since Pinelawn Cemetery raises objections with respect to whether "the proposed acquisition is within the [MTA's] statutory jurisdiction or authority" (EDPL 207[C][2]), the proper recourse was for it to seek expeditious review by bringing a proceeding in this court under EDPL 207. EDPL 208 states that, "no court of this state shall have jurisdiction to hear and determine any matter, case or controversy concerning any matter which was or could have been determined in a proceeding under [article 2]". Having failed to timely raise this objection, Pinelawn Cemetery "may not circumvent the command of the statute with respect to procedures governing judicial review by raising [this] objection."
 
 
 65
 Id. Although the court went on to observe in dicta in a final concluding paragraph that "[i]n any event, we find no evidence in the record to support Pinelawn Cemetery's conclusory allegations that the MTA intends to construct an access road," id., the clear import of the court's holding, echoed in every New York state court decision on this issue, is that Article 2 claims may not be raised as Article 4 defenses or counterclaims. See In re Broome Cty., 159 A.D.2d 790, 551 N.Y.S.2d 1007, 1009 (3d Dept. 1990) (holding that where a property owner failed to make a timely § 207 constitutional challenge, § 208 barred him from raising those claims in an answer to a § 402 petition); Uah-Braendly Hydro Associates v. RKDK Assocs., 138 A.D.2d 493, 526 N.Y.S.2d 122, 123 (2d Dept. 1988) (holding, in a § 402 proceeding, that "[a]ll other issues raised in the answer are within the ambit of EDPL 207 and could have been reviewed by the Appellate Division upon a petition brought within 30 days after completion of publication of the condemnor's determination and findings. Having failed to timely bring such a petition, the condemnee cannot assert those issues in the condemnation court."); Village of Patchogue v. Simon, 112 A.D.2d 374, 491 N.Y.S.2d 827, 828-29 (2d Dept. 1985) ("Since appellant raises objections with respect to whether the condemnor's determination and findings were made in accordance with the procedures set forth in EDPL article 2, an issue within this court's exclusive jurisdiction (EDPL § 207[C][3]), appellant's proper recourse was to seek expeditious review by filing a petition in this court pursuant to EDPL 207. Having failed to do so, appellant may not circumvent the command of the statute with respect to the procedures governing judicial review by raising his objections within the context of an EDPL article 4 vesting proceeding before Special Term.").
 
 
 66
 De Vito v. City of Troy, 72 A.D.2d 866, 421 N.Y.S.2d 719, 720 (3d Dept. 1979), also relied on by the Village in support of its claim that Brody could have asserted his untimely claims in defense to the Article 4 petition, was an Article 2 proceeding. In De Vito, the city moved to dismiss on the ground that the plaintiff's petition was barred by the thirty day statute of limitations. Id. While the court considered (and rejected) the plaintiffs' argument that the thirty-day limitations period should not apply because the plaintiffs had not received individual notice of the publication of determination, this suggests only that Brody might have been able to assert his due process claims in an untimely Article 2 proceeding, not that he could have asserted them as counterclaims in the § 402 action filed by the Village.[3]
 
 
 67
 The district court also concluded that "[i]f Brody had brought the instant challenge in the state proceeding [under Article 4], the New York court would have considered it, just as it considered his argument that the government had an obligation to extend to him an offer of compensation for his home," relying on N.Y. C.P.L.R. § 103(c) (Consol.2003) ("If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution."). Minnich, 2001 WL 1111513, at *6.[4] EDPL § 703, however, specifically provides that "[t]he civil practice laws and rules shall apply to practice and procedure in proceedings under this law except where other procedure is specifically provided by this law or rules governing or adopted by the appropriate court." EDPL § 703 (emphasis added); see also id. § 705 ("Notwithstanding any inconsistent provisions of law, general or special, the provisions of this law shall be controlling...."). We therefore disagree with the district court's conclusion that the general CPLR provision cited above vested the Article 4 court with jurisdiction over Brody's constitutional claims.
 
 
 68
 Moreover, this interpretation does not, as the district court suggested, necessarily leave property owners such as Brody without any means to challenge the constitutionality of New York's condemnation procedures. As Brody's counsel acknowledged at oral argument and as suggested by De Vito, Brody might have attempted to file an untimely § 207 petition before the appellate division, asserting that the statute of limitations should not apply because he did not have adequate notice, was therefore deprived of due process, and should be permitted to raise his challenges as to the purported public use. That he failed to do so, however, has no bearing on whether his claims are barred by the res judicata effect of the Article 4 proceeding.
 
 
 69
 In light of the clear language of § 208, Brody could not have asserted his due process claims as counterclaims in the Article 4 proceeding, and therefore res judicata does not bar the assertion of the constitutional challenge to the lack of individual notice of the publication of the determination and findings and the lack of notice as to the legal import of such publication.
 
 V. Mootness
 
 70
 Having found that Brody's claims are not barred by res judicata, we now turn to the Village's arguments as to why events that have transpired since the filing of this lawsuit now render the appeal moot. The Village contends that Brody's acceptance of the advance payment renders his challenges to the condemnation moot because title has already passed and that the sale of the property to the developer and then to the Village IDA makes it impossible to award the relief sought by Brody. We conclude that neither of these arguments renders this litigation moot for the reasons set forth below.
 
 A. Advance Payment Agreement
 
 71
 The Advance Payment Agreement was entered into on May 30, 2002, pursuant to Article 3 of the EDPL, which requires the condemnor to make a written offer of what the condemnor believes to be fair compensation for the property. See EDPL §§ 303, 304. Under EDPL § 304, the condemnee may elect to accept the payment in full, to accept the payment as an advance payment (while reserving the right to claim additional compensation), or to reject the payment. Section 304 also requires the written offer to state that "[t]he right of the condemnee to the advance payment shall not be conditioned on the waiver of any other right." EDPL § 304(A)(4) (emphasis added).
 
 
 72
 The Agreement signed by Brody and the Village provides that:
 
 
 73
 FIRST, the Owner elects to accept an advance payment in the sum of ONE MILLION EIGHT HUNDRED THOUSAND and 00/100 ($1,800,000) DOLLARS, which payment shall be without prejudice to the rights of either of the parties hereto, and the Village agrees to pay such sum as hereinbefore set forth.
 
 
 74
 THIRD, the parties hereto agree that the title to said property vested in the Village on August 28, 2001.
 
 
 75
 * * * * * *
 
 
 76
 NINTH, the Owner agrees as a prerequisite to such payment, to execute and deliver, or cause the execution and delivery, to the Village of all formal papers which the Village deems reasonably necessary to clear any objections to title, and to secure to the Village a partial release from the claim as to the amount of the advance payment, including but not limited to an Affidavit of Title and a Partial Release as to the amount of the advance payment as provided herein.
 
 
 77
 Ex. I to Def. Motion to Dismiss (emphasis added).
 
 
 78
 The Village contends that "[b]y entering into the Advance Payment Agreement and accepting the $1,800,000 payment, Brody has thus agreed that the Village has title to his property and to cooperate with the Village in clearing any objections to the Village's title. Accordingly, Brody no longer has any cognizable interest in opposing the condemnation of his property. Brody's sole remaining interest is in pursing his claim for compensation in the state court." Def. Motion to Dismiss, at 8. There are several flaws in this reasoning.
 
 
 79
 First, nowhere in the Advance Payment Agreement did Brody agree that he will not contest the transfer of title of his property to the Village. That agreement simply acknowledged that title to the property had already passed by operation of New York law as soon as the Article 4 petition was approved. See EDPL § 402(B)(5). Second, the first paragraph expressly states that the acceptance of payment is without prejudice to the rights of either party. Contrary to the Village's position, Brody's acceptance of the payment "without prejudice" to his rights to continue this lawsuit does not render the Advance Payment Agreement meaningless. The advance payment is a statutory creation that allows property owners to receive money while condemnation proceedings are in progress, and the statute expressly provides that acceptance of the advance payment cannot be conditioned on the relinquishment of rights. Id. § 304(A)(4). We further find significant the fact that the statute does not preclude payment of the advance payment before an Article 4 petition has been granted, or even before an Article 2 challenge has been resolved by the courts. Thus, contrary to the Village's assertion, the statutory scheme does not necessarily contemplate that advance payment will be made only after all challenges to title have been resolved and title has passed to the condemnor.
 
 
 80
 We also reject the Village's argument that the Agreement's requirement that Brody deliver "all formal papers which the Village deems reasonably necessary to clear any objections to title," includes a release of claims in this lawsuit.[5] The Agreement specifically requires a partial release only "as to the amount of the advance payment." In light of this clearly limited language, as well as the broad reservation of rights language, we hold that Brody did not relinquish his rights to pursue this litigation by accepting the advance payment.
 
 B. Absent Parties
 
 81
 The Village next argues that as the property has been conveyed to the Village IDA and development is underway, the appeal is moot because "[i]n the absence of necessary parties who control the property in question, restoration is impossible." Reply in Support of Motion to Dismiss, at 2. While Brody responds that the Village IDA is in privity with the Village and thus is not necessary to afford complete relief, this issue has not been developed in the record below, and we therefore do not reach it on appeal. We do, however, consider the Village's argument that the Village IDA is a necessary party, although we disagree with the Village's characterization of this issue as bearing on whether the appeal is moot.
 
 
 82
 Fed.R.Civ.P. 19(a) provides that an absent party, the joinder of which will not deprive the court of jurisdiction, shall be joined if (1) in its absence the court cannot grant complete relief among those already parties, (2) the absent party claims an interest related to the action and is so situated that disposition of the action without that party may impair its ability to protect its interests, or (3) failing to join the absent party subjects parties already in the action to a substantial risk of double liability or otherwise inconsistent obligations. Brody's claim for return of the property implicates the first two prongs of Rule 19(a) because the Village IDA — as the title holder — would have an interest in the litigation, and its absence as a party would prevent the district court from awarding Brody return of the property. Brody's claim for a new hearing might further implicate the second prong as the Village IDA or other non-parties also may have an interest in opposing this outcome and that interest might not be fully represented by the Village. We need not determine, however, whether the Village IDA or any other parties are necessary in order to award the relief sought as such an issue is better left for the district court to address on remand. It is enough for us to say that the absence of the Village IDA or other potentially interested parties does not by itself render the appeal moot. See Fed.R.Civ.P. 21 ("Misjoinder of parties is not ground for dismissal of an action.").[6]
 
 
 83
 An analogous situation was presented in Kulawy v. United States, 917 F.2d 729 (2d Cir.1990). Kulawy challenged the government's sale of his seized property as having occurred without the statutorily required notice. The district court granted summary judgment for the government, finding only a de minimis procedural violation. Id. at 732. Although the actual sale of the property had not occurred at the time the complaint was filed, the property was then sold during the pendency of the litigation. On appeal, the government argued that the complaint should be dismissed because adequate relief could not be afforded without the subsequent purchasers. This Court first addressed the merits of the summary judgment ruling, holding that strict compliance with the statutory forfeiture procedures was required. Id. at 734. We then turned to the government's argument that the purchasers were missing necessary parties:
 
 
 84
 In the absence of the purchasers, the court cannot grant relief affecting title to the automobiles.... Kulawy would have been hard pressed, of course, to name the purchasers in his original complaint, as the sales had not then occurred. He could, however, have sought leave to add the purchasers once the sales were completed. If he does not do so on remand, the court should dismiss the action. If the purchasers are added as defendants and the court finds it established that the minimum 10-day [statutory notice] requirement ... was not met, the court should order a new sale, preceded by the proper period of public notice.
 
 
 85
 Id. at 736.
 
 
 86
 Here too, at the time the complaint was filed, Brody's property had not yet been condemned. Like Kulawy, Brody had no reason to name the Village IDA as a defendant at the time the complaint was filed or during the pendency of the district court proceedings.[7] The fact that the Village proceeded with the condemnation and sale to the Village IDA after Brody filed his lawsuit should not deprive Brody of an opportunity to amend his complaint to join the Village IDA, or other necessary parties on remand, and to assert claims for damages to his property arising out of the condemnation. See Fed.R.Civ.P. 15(d) ("Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."); cf. Morris v. Lindau, 196 F.3d 102, 117 (2d Cir.1999) (recommending that plaintiffs be directed to file a supplemental complaint on remand based on events that occurred after the district court had dismissed the plaintiffs' claims).[8]
 
 
 87
 Rule 19 joinder of the Village IDA or other parties will be necessary, of course, only in the event that complete relief cannot be afforded in their absence, or if the interests of these parties will be prejudiced by a ruling against them. Determining whether a particular absent entity is necessary, therefore, turns in part on what the appropriate relief would be if a due process violation is found to have occurred. Because the parties before us appear erroneously to assume that the property will be returned to Brody if a due process violation is found, we discuss below the issue of remedies to provide guidance for the district court in considering the Rule 19 joinder issue.
 
 
 88
 The appropriate remedy for a proven due process violation often depends on the stage at which the violation is found and the relief sought. Where damages are sought for a due process violation that has already occurred, courts consider whether the evidence demonstrates that the outcome would have been different had the required process been afforded. See, e.g., Miner v. City of Glens Falls, 999 F.2d 655, 661-62 (2d Cir.1993) (affirming award of compensatory damages, including back pay, where undisputed evidence demonstrated that police officer would not have been terminated had he been given the required hearing). On the other hand, where injunctive relief is sought, courts simply have ordered the responsible government entity to provide an opportunity for process going forward. See, e.g., Goldberg v. Kelly, 397 U.S. 254, 260, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (holding that the government must hold pre-deprivation hearings before terminating welfare benefits); Krimstock v. Kelly, 306 F.3d 40, 68-69 (2d Cir.2002) (finding that New York statute deprived claimants of due process by not affording a meaningful opportunity to be heard and ordering that claimants whose vehicles were seized pursuant to New York statute be provided prompt post-seizure retention hearing).
 
 
 89
 Brody's property has already been condemned, and the Village cannot now offer him any pre-deprivation opportunity to appeal the determination and findings and challenge the lack of public use. The difficulty here is that Brody does not seek damages for the alleged due process violation; instead, he demands reconveyance of his property. But, even if the district court were to find that Brody's procedural due process rights were violated, the relief Brody seeks is appropriate only if Brody can prove that any of his arguments opposing the condemnation that he would have asserted had he been given notice and thereby allowed to appeal would have prevailed. See, e.g., Hopkins v. Saunders, 199 F.3d 968, 979 (8th Cir.1999) ("[I]n the context of public employment, reinstatement is proper only where a tenured employee would not have been dismissed if his procedural due process rights had been observed. Where an employee would have been discharged even if he had received due process, i.e. was discharged for cause, his sole injury is the lack of process and only nominal damages are proper."); McGhee v. Draper, 639 F.2d 639, 646 (10th Cir.1981) (suggesting that reinstatement is a proper remedy only if the plaintiff proves that "she would in fact have been retained had full procedural due process been provided").
 
 
 90
 We recognize that at least one other circuit appears to order reinstatement and backpay as a remedy in employment cases before a new hearing is held. See McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir.1994) ("In procedural due process cases,... although the claimant may seek compensatory damages, the primary relief sought is equitable: for instance, in an employment case, the claimant typically seeks reinstatement and a properly conducted pre-termination hearing.").[9] This intermediate remedy would be analogous to ordering a return of Brody's property upon a finding of a due process violation, and then requiring the Village to begin again and initiate condemnation procedures that complied with due process, regardless of the likely merits of Brody's challenge in the Article 2 process. While we express no view on what the appropriate remedy would be for denials of due process in the employment context, we find that the reliance interests of third parties in this case are sufficiently compelling that Brody is entitled to a return of his property only if he can prove that any denial of due process made a difference in the condemnation proceedings. Moreover, in cases such as this one, we believe that these same reliance interests create a strong incentive for the condemnor to comply with the requirements of due process before the property has been condemned and development has begun, in light of the risk that a court somewhere down the road might order a return of the property.
 
 
 91
 We therefore hold that Brody is entitled to a return of his property only if he proves that any denial of due process made a difference in the outcome. As noted above in the context of standing, Brody still may be entitled to declaratory relief and nominal damages in the event a procedural due process violation is proven, even if the district court does not find that Brody's challenge to the condemnation would have prevailed.
 
 
 92
 Accordingly, the district court should consider on remand whether it is necessary to add any parties, in light of the relief contemplated in the event that any due process violation is found, and whether to allow Brody to amend his complaint to assert new claims for damages, before ultimately turning to the merits of Brody's due process claim.
 
 CONCLUSION
 
 93
 Because Brody's due process claim is not barred by res judicata, the district court's grant of summary judgment is vacated and remanded for proceedings consistent with this opinion. On remand, the district court should consider Brody's argument that the Village and the Village IDA are in privity, as well as whether Rule 19 requires joinder of any absent parties. The district court should also consider whether to allow Brody to amend his complaint to assert claims for damages in light of the events that have occurred since the filing of his complaint. After resolving these issues, the district court should then determine whether the lack of individualized notice of the publication of the determination and findings, and lack of notice of the legal consequences of that publication, violates due process.
 
 
 
 Notes:
 
 
 *
 The Honorable George B. Daniels, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The parties do not dispute that Brody was required to assert this claim for damages to preserve it, and there is no contention that Brody has waived any of his claims in the instant action by asserting this damages claim
 
 
 [2]
 While the Village argues that Stanley Perelman, a representative of the developer, testified in his deposition that he told Brody that the approvals were in place and that the 30-day appeal period had begun to run, this at most creates an issue of disputed fact, as Brody has unequivocally denied knowledge of the existence of the determination and findings or the appeal period
 
 
 [3]
 The Village's reliance onCounty of Monroe v. Morgan, 83 A.D.2d 777, 443 N.Y.S.2d 467 (4th Dept. 1981), is also unavailing. Although not a model of clarity, we interpret that decision as permitting the respondent (Morgan) to challenge in an Article 4 proceeding the condemnor's argument that it was exempt from Article 2's notice and publication requirements. That challenge to exemption, like Brody's constitutional claims, falls within § 208's list of claims that may only be brought in an Article 2 proceeding. But, where § 207 gives the Article 2 court affirmative jurisdiction over claims like Brody's, it fails to similarly grant jurisdiction over challenges to claims of exemption. Due to this "ambiguous" statutory language, which the court noted was in "dire need of legislative correction," id. at 467, the Morgan court recognized that refusing to hear the challenge would effectively leave the respondent without any forum to assert that claim. It, therefore, made a limited exception to permit the respondent to raise her Article 2 claim in response to the Article 4 petition. See also Town of Coxsackie v. Dernier, 105 A.D.2d 966, 482 N.Y.S.2d 106 (3d Dept. 1984) (recognizing that exemption challenges cannot be asserted under Article 2); Piotrowski v. Town of Glenville, 101 A.D.2d 654, 475 N.Y.S.2d 511 (3d Dept. 1984) (same). Nothing in this line of cases, however, suggests that Brody could have brought his constitutional challenges in an Article 4 proceeding.
 
 
 [4]
 The issue of whether the Village was required to make an offer of compensation before taking title to his property, which Brody did raise as a counterclaim to the Article 4 petition, was arguably a "new matter constituting a defense to the proceeding," and thus expressly permitted under EDPL § 402(B)(4)
 
 
 [5]
 The Village has since sought a general release that would encompass the claims at issue in this litigation, but Brody has refused to sign it. We note that the Village was well aware of Brody's federal suit before it made the advance payment, and before transferring the property to the developer. Had it wished to secure a clear release of the federal claim before allowing development to proceed on the project, it could have attempted to do so
 
 
 [6]
 Because our holding above on theres judicata issue is based entirely on a question of law on which the Village and the IDA's interests are identical, we see no obstacle to considering this limited question going to the merits of this appeal before the district court determines whether the Village IDA is a proper party to be joined.
 
 
 [7]
 The district court granted summary judgment on September 19, 2001, and the notice of appeal was filed October 18, 2001. The § 402 petition allowing the Village to obtain title to the property was approved by the New York Supreme Court on August 27, 2001. The property was sold to the Village IDA on September 14, 2001, and the lease between the developer and the Village IDA was entered into on October 3, 2001. While Brody technically could have moved to amend his complaint before the district court ruled on the summary judgment motion, in light of the close proximity between the date of the judgment below and the sale to the Village IDA and as there is no evidence suggesting that Brody was aware of the sale at the time the district court entered judgment, we do not fault Brody for failing to raise this issue with the district court
 
 
 [8]
 Although the Village argues that "even assuming that the District Court eventually found that New York's condemnation process is unconstitutional, the Village can no longer be enjoined from condemning Brody's property — Brody has acknowledged and agreed that the condemnation has already occurred and that title has vested in the Village," Motion to Dismiss, at 9, simply acknowledging that the condemnation has occurred does not preclude Brody from arguing that the transfer of title was improper and should be returned. If the district court were to find on a more developed record that complete reconveyance of all six parcels of Brody's land is impossible, Brody might be entitled to other remedies that are not encompassed within his pending state court claim for compensation. As Brody indicates a desire to amend his complaint to seek damages to the extent that some of his property has been destroyed since the litigation commenced, the district court may consider whether such an amendment would be permissible under Fed.R.Civ.P. 15
 
 
 [9]
 Our Circuit has not resolved this issue. InEzekwo v. New York City Health & Hospitals Corp., 940 F.2d 775, 786 (2d Cir.1991), we suggested that compensatory damages for lost wages would be appropriate for a denial of procedural due process without clarifying whether those damages should be awarded only where the finder of fact concludes that but for the denial of process, the person would have received the desired promotion, or whether such damages were only appropriate for the time period before notice was provided.