■ In the Matter of MAZUR BROTHERS REALTY, LLC, Appellant, v STATE OF NEW YORK et al., Respondents, et al., Respondents. (Special Proceeding Nos. SP-120, SP-121.) [987 NYS2d 74]—

In two related special proceedings for the distribution of money pursuant to Court of Claims Act §§ 22 and 23, the petitioner appeals from so much of an order of the Court of Claims (Ruderman, J.), dated November 27, 2012, as granted the petitions only to the extent of directing the distribution to it of the principal sum of $821,200 with respect to real property located at 80 Lake Street, White Plains, New York, in connection with matter No. 1, and the principal sum of $890,120 with respect to real property located at 90 Lake Street, White Plains, New York, in connection with matter No. 2, and failed to award it 9% interest on those sums from the date that the sums were deposited by the State of New York into special eminent domain accounts until the date of payment.

Ordered that the order is modified, on the law and the facts, by increasing the amount of the distribution from the principal sum of $821,200 with respect to the real property located at 80 Lake Street to the principal sum of $1,369,500, and from the principal sum of $890,120 with respect to the real property located at 90 Lake Street to the principal sum of $1,011,500; as so modified, the order is affirmed insofar as appealed from, with costs to the petitioner.

As explained in a decision and order entered in connection with a prior appeal to this Court (*see Matter of Mazur Bros., Inc. v State of New York*, 97 AD3d 826 [2012]), on April 4, 2006, the State of New York, pursuant to the authority granted to it by Highway Law § 30 and the Eminent Domain Procedure Law, acquired two parcels of real property in White Plains, located at 80 Lake Street and 90 Lake Street, respectively, for the purpose of improving the Cross Westchester Expressway. Those parcels were owned by the petitioner Mazur Brothers Realty, LLC (hereinafter Mazur), and leased to Mazur Brothers, Inc. (hereinafter MBI). MBI operated a furniture store and furniture warehouse on the subject property.

Pursuant to an agreement of adjustment (*see* EDPL 304 [A] [2]), Mazur settled its claims relating to 80 Lake Street for the sum of $1,369,500. Prior to the payment of the settlement amount, the State demanded that Mazur produce an assignment of claim and release from MBI. Mazur failed to produce the release, and indicated that MBI would file a separate claim to compensate MBI for the taking of its trade fixtures. The State deemed the settlement amount to be subject to conflicting claims and, pursuant to EDPL 304 (E) (1), deposited the sum of $1,369,500 into a special interest-bearing escrow account. Mazur commenced a special proceeding seeking distribution to it of the entire amount in escrow.

With respect to 90 Lake Street, Mazur and the State entered into an agreement of advance payment (*see* EDPL 304 [A] [3]), pursuant to which Mazur was to receive $1,011,500, but was not to be precluded from seeking additional compensation from the State. However, because Mazur refused to produce a release from MBI in connection with 90 Lake Street as well, the State would not release these funds to Mazur and, pursuant to EDPL 304 (E) (1), instead deposited the sum of $1,011,500 into a special interest-bearing eminent domain escrow account. Mazur commenced a second special proceeding, seeking distribution to it of the entire amount in escrow.

After this Court entertained various appeals pertaining to this matter, the Court of Claims (Scuccimarra, J.) conducted a nonjury trial. It thereafter awarded compensation to MBI in the amount of $548,300 for its trade fixtures at 80 Lake Street and $219,700 for its trade fixtures at 90 Lake Street, and found that the fair market value of the real property at 90 Lake Street was $1,118,600, or $107,100 more than the sum of $1,011,500 that had been placed by the State in a special interest-bearing eminent domain escrow account pursuant to the agreement of advance payment (*see Mazur Bros. Realty, LLC v State of New*

*York*, 36 Misc 3d 1234[A], 2010 NY Slip Op 52456[U] [Ct Cl 2012]). This Court modified the ruling only to the extent of reducing the award for trade fixtures at 90 Lake Street from the principal sum of $219,700 to the principal sum of $156,600 (*see Matter of Mazur Bros., Inc. v State of New York*, 97 AD3d 826 [2012]), noting that "[t]rade fixtures owned by a tenant are valued separately from the realty" (*id.* at 829).

In an order dated November 27, 2012, the Court of Claims (Ruderman, J.) subtracted MBI's trade-fixture award for 80 Lake Street from the $1,369,500 that had been offered to Mazur pursuant to the agreement of adjustment, and subtracted a portion of MBI's trade-fixture award for 90 Lake Street from the $1,011,500 that had been offered to Mazur pursuant to the agreement of advance payment. The court acknowledged Mazur's argument that the offer amounts set forth in the agreement of adjustment and the agreement of advance payment were only for the real property, and did not include compensation for trade fixtures, but concluded that it was constrained by certain language in a prior order of this Court (*see Matter of Mazur Bros. Realty, LLC v State of New York*, 69 AD3d 726, 728 [2010] ["(t)he agreements provided that the compensation paid by the State was for the total value of the property appropriated, which included both the real property and the trade fixtures"]). The Court of Claims also declined Mazur's request that it award interest at a rate of 9% on the sums to be distributed, from the date that the sums were deposited by the State into special eminent domain escrow accounts until the date of payment. Instead, the court stated that "[t]he awards are made with statutory interest from the date of vesting (April 4, 2006) to the deposit of the advance payments with the Comptroller and whatever interest applies to the Comptroller's accounts from the date of deposit until payment." Mazur appeals.

Mazur correctly contends that the awards to MBI should not have been subtracted from the amounts set forth in the agreement of adjustment and the agreement of advance payment. Notwithstanding any prior conclusions drawn by this Court that were based solely on certain language in the agreements, the current record reflects that, in fact, the offer amounts did not include compensation for both the real property *and* trade fixtures. Rather, the offer amounts only covered the real property. Thus, no valid basis exists for diminishing Mazur's awards (*see L. B. Oil Co. v State of New York*, 81 AD2d 856 [1981], *affd* 54 NY2d 964 [1981]; *see also United States v Certain Prop. Located in Borough of Manhattan, City, County & State of N.Y.*, 344 F2d 142, 146 [2d Cir 1965]).

The State, the New York State Attorney General, and the New York State Comptroller (hereinafter collectively the State respondents) insist that this Court is bound by its prior holdings, based on the doctrine of law of the case. We disagree. "[L]aw of the case rests on a foundation that . . . distinguishes it from issue and claim preclusion. Whereas the latter concepts are rigid rules of limitation, law of the case is a judicially crafted policy that expresses the practice of courts generally to refuse to reopen what has been decided, [and is] not a limit to their power. As such, law of the case is necessarily amorphous in that it directs a court's discretion, but does not restrict its authority" (*People v Evans*, 94 NY2d 499, 503 [2000] [internal quotation marks omitted]). Here, the more fully developed record before this Court justifies a new determination with respect to the extent of the compensation that was offered in the agreements (*see Matter of Village of Port Chester v Sorto*, 14 AD3d 570, 570-571 [2005]; *see also Brody v Village of Port Chester*, 345 F3d 103, 110 [2d Cir 2003]; *Doctor's Assoc., Inc. v Distajo*, 107 F3d 126, 132 [2d Cir 1997]; *cf. Wells Fargo Bank Minn., N.A. v Perez*, 70 AD3d 817 [2010]).

Accordingly, Mazur is entitled to distribution of the entire amounts in both of the special eminent domain escrow accounts, established pursuant to the agreement of adjustment and agreement of advance payment, respectively. Our determination is consistent with the rule that the State has an "independent obligation to pay just compensation" (*Chase Manhattan Bank v State of New York*, 103 AD2d 211, 221 [1984]). Indeed, as the United States Court of Appeals for the Second Circuit has observed, "[j]ust as the Government's interest in a criminal prosecution is not that it shall win a case, but that justice shall be done, so its interest as a taker in eminent domain is to pay the full and perfect equivalent in money of the property taken, neither more nor less—not to use an incident of its sovereign power as a weapon with which to extort a sacrifice of the very rights the [Fifth] Amendment gives" (*United States v Certain Prop. Located in Borough of Manhattan, City, County & State of N.Y.*, 306 F2d 439, 452-453 [2d Cir 1962] [internal quotation marks omitted]).

However, we agree with the State respondents' contention that Mazur and MBI engaged in certain behavior that created a genuine conflict as to which parties were entitled to what funds, such that the sums were properly deposited into the special eminent domain escrow accounts. We therefore decline to disturb the Court of Claims' determination with respect to the award of interest (*see Serf Realty Co. v State of New York*, 228

AD2d 428 [1996]). Rivera, J.P., Austin, Roman and Hinds-Radix, JJ., concur.