08-2795-cr
United States v. Ray

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: January 14, 2009                                    Decided: August 27, 2009)

Docket No. 08-2795-cr

UNITED STATES OF AMERICA,

*Appellee*,

v.

SHEENA DELOACHE RAY, a/k/a Sheena Deloache Harper,

*Defendant-Appellant.*[*]

Before: LEVAL, CABRANES, and LIVINGSTON, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Thomas C. Platt, *Judge*), sentencing defendant, after a fifteen-year delay, to a one-day term of imprisonment and three years of supervised release with a special condition that she serve six months in a halfway house. Defendant challenges her conviction and sentence on the grounds that she was deprived of her right to a speedy sentencing under the Speedy Trial Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment. Alternatively, defendant seeks a remand for resentencing because, in her view, the sentence serves no rehabilitative purpose and is, consequently, unreasonable. We reject defendant's Sixth Amendment challenge because sentencing and trial are separate and distinct phases of criminal proceedings, and the Speedy Trial Clause applies to trials only, not to sentencing proceedings. We do, however, see merit in her Fifth Amendment challenge. The fifteen-year delay in the imposition of sentence on defendant is not justified by any legitimate reason and has caused her prejudice insofar as the custodial portion of it threatens to undermine her successful rehabilitation. We therefore vacate the portion of her sentence requiring a six-month residence in a

_____

[*] The Clerk of Court is directed to amend the official caption in this case to conform to the listing of the parties above.

1

halfway house in order to remedy the prejudice caused by the violation of her rights under the Due Process Clause. We do not reach her "unreasonableness" challenge to the sentence.

Affirmed in part, and vacated with respect to the special requirement that defendant reside for six months in a halfway house.

CHARLES P. KELLY, Assistant United States Attorney (Benton J. Campbell, United States Attorney, *on the brief*, David C. James, Assistant United States Attorney, *of counsel*), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, *for Appellee United States of America.*

YUANCHUNG LEE, Appeals Bureau, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant Sheena Deloache Ray.*

JOSÉ A. CABRANES, *Circuit Judge*:

We consider in this opinion several challenges to a sentence imposed fifteen years after a conviction. Defendant-appellant Shenna Deloache Ray[1] appeals from a June 3, 2008 judgment of the United States District Court for the Eastern District of New York (Thomas C. Platt, *Judge*), convicting her of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. Ray had pleaded guilty to the charge on December 27, 1991, but her case was remanded on direct appeal pursuant to a stipulation by the parties to seek resentencing before the District Court. App. 59 (Jan. 14, 1993 Order in No. 92-1281-cr). The case then lay dormant for fifteen years until defendant was finally summoned for resentencing in January 2008. After holding a hearing, the District Court sentenced Ray to a one-day term of imprisonment and three years of supervised release with a special condition that she serve six months in a halfway house. On appeal, Ray seeks vacatur of her conviction and a dismissal of the indictment against her on the ground that she was deprived of her right to a speedy sentencing under the Speedy Trial Clause of the Sixth Amendment. Ray also seeks relief for a violation of her right to a speedy sentence pursuant to the Due Process Clause of the Fifth Amendment. Alternatively, Ray seeks a remand for resentencing because, in her view, a six-month commitment to a halfway house is substantively unreasonable because it would serve no rehabilitative purpose in light of the fact that she has committed no crimes in the fifteen years since this Court remanded her case for resentencing.

This appeal presents a series of questions that have not yet been resolved by our Court, including whether the right to a speedy sentencing is guaranteed by the Speedy Trial Clause of the Sixth

---

[1] Defendant's first name—"Shenna"—has been misspelled as "Sheena" throughout these proceedings, as reflected in the caption of this opinion and the original indictment in the District Court.

Amendment and/or the Due Process Clause of the Fifth Amendment. If the right to a speedy sentencing is protected by the Constitution, we must then determine the standard for evaluating an alleged violation of that right and the appropriate remedy.

## BACKGROUND

The following facts are not in dispute. In an indictment dated September 27, 1991, a grand jury sitting in the Eastern District of New York charged Ray and three co-defendants with mail fraud and conspiracy to commit mail fraud. The thirty-one count indictment described a scheme in which Ray and her co-conspirators fraudulently caused American International Adjustment Company, Inc. ("AIAC"), Ray's employer, to issue checks on closed accounts that were payable to members of the conspiracy. This scheme defrauded AIAC of over $200,000 between April 1988 and May 1989. On December 27, 1991, Ray pleaded guilty to the conspiracy charge pursuant to a plea agreement with the government. The District Court held a sentencing hearing on May 8, 1992. According to a presentence investigative report ("PSR") prepared by the United States Probation Office, Ray's total offense level under the U.S. Sentencing Guidelines ("U.S.S.G.") was thirteen, and her criminal history category was I, corresponding to a then-mandatory Guidelines range of twelve to eighteen months' imprisonment.[2] Ray asked the District Court to consider mitigating factors that, in her view, were not adequately reflected in the PSR calculation. First, she argued that her extraordinary family circumstances, including that she was the "sole supporter of her two natural and two foster children," App. 42 (Mar. 30, 1992 letter of Lori H. Levinson, Esq., attorney for Ray), warranted a downward departure pursuant to U.S.S.G. § 5H1.6. Second, Ray requested a three-level reduction pursuant to U.S.S.G. § 5K2.12 because she "committed the crime . . . at the insistence, and because of threats made by her former husband." *Id.* at 43. Finally, she asked the District Court to impose a sentence that did not entail incarceration because she was pregnant at the time. *Id.*

The District Court denied Ray's application for a departure because it believed that it lacked authority to depart on the grounds urged by Ray. The District Court explained, "every time that I have departed from the [Guidelines] and the government has challenged it, as they are apparently prepared to do here, [the Court of Appeals] ha[s] sent it back and said, 'no.'" App. 52 (May 8, 1992 Tr. 5:13-16). After suggesting that defense counsel "[take] a trip to the Second Circuit," the District Court sentenced Ray principally to a twelve-month term of incarceration—the minimum term of imprisonment under the applicable Guidelines range. *Id.* (May 8, 1992 Tr. 5:21-22). Ray appealed the District Court's judgment, and was released on bail pending appeal.

---

[2] Ray's total offense level in the PSR included, among other things, a two-level reduction pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility.

While Ray's appeal was pending, another panel of this Court held, in *United States v. Johnson*, that extraordinary family circumstances may, in appropriate cases, constitute proper grounds for a departure from the otherwise applicable Guidelines range. 964 F.2d 124, 128 (2d Cir. 1992). Defense counsel and the government then agreed that Ray was entitled to be resentenced pursuant to *Johnson*, and Ray moved to remand the case to the District Court. That motion was granted on January 14, 1993. The mandate issued, and jurisdiction was restored to the District Court on January 21, 1993. For unknown reasons, no further action was taken on Ray's case for fifteen years.

Apparently believing that this matter was behind her, Ray continued to live openly in the Eastern District of New York. She obtained lawful employment and paid federal and state taxes. Ray made no attempt to hide her identity or avoid detection by law enforcement authorities. As the government concedes, Ray "reformed [her] lifestyle," achieving "successful self-rehabilitation . . . during the 15-year period of dormancy in her case." Appellee's Br. 6 n.3. By 2008, Ray had been employed for fifteen years, raised three children, and remarried. She owned a home and a car, and she was enrolled in an associate's degree program at Queensborough Community College. Neither she, nor any of her children—two of whom were then enrolled in college—had any contact with the criminal justice system.

In late 2007, Ray applied to be a "Claims Examiner" with the Metropolitan Transportation Authority Bus Company. In order to obtain that position, she was required to provide documentation of the resolution of her 1992 conviction. Ray contacted the Clerk of Court at both the Second Circuit and the District Court in order to obtain a document indicating the disposition of her case.[3] On January 31, 2008, the District Court filed a Notice Setting Status Conference, stating that "[i]t has been recently brought to the Court's attention that the defendant was never re-sentenced and never served the original sentence." App. 67. The District Court set a "re-sentence date" for March 5, 2008. *Id.*

Sentencing proceedings were held as scheduled. Counsel for Ray, a member of the office of the Federal Defenders of New York, urged the District Court to exercise its discretion to impose a lenient sentence in light of Ray's rehabilitation.[4] The District Court inquired whether Ray's former defense counsel had "an obligation to the Court to bring the defendant here immediately after [the Second Circuit's] decision, rather than not produce her to the Court until 16 years [sic] later[.]" App. 78 (Mar. 5, 2008 Tr. 11:19-22). Defense counsel explained that Ray's case had been marked closed, transferred to

---

[3] Ray had previously requested documentation of the disposition of her case in 2006. An employee of the United States Attorney's Office for the Eastern District of New York retrieved the file from the National Archives Center, but returned it without taking any action on the case.

[4] At this time, Ray's counsel did not argue for a lenient sentence based upon the lengthy delay before resentencing.

another unit in the office, and not returned to her office after the case was remanded to the District Court. The District Court did not accept this explanation because, in the Court's view, defense counsel have an obligation to produce their client for resentencing. The Court stated: "For 16 years [sic] here nothing has happened. I'm not going to tolerate this. You may get away with it with every other judge, but not me." *Id.* at 79 (Mar. 5, 2008 Tr. 12:17-19). Defense counsel apologized, saying that "if your Honor wants to hold our office accountable and sanction us in some way, that seems to me a different matter. But I would hope and urge your Honor not to hold it against [Ray.]" *Id.* at 80-81 (Mar. 5, 2008 Tr. 13:24-14:3). Defense counsel then continued to make her case for a lenient sentence.

Counsel for the government spoke next. After apologizing for the role of his office in failing to bring this matter promptly to the attention of the District Court, the prosecutor stated that he was not prepared, at that time, to oppose Ray's motion for a downward departure. He then expressed concern that, although he had not yet completed his research, Ray's "right . . . to a speedy sentencing" might have been violated. *Id.* at 87 (Mar. 5, 2008 Tr. 20:22-23). After further examination of the possible violation, the District Court instructed the parties to brief the issue of whether Ray's right to a speedy sentence had been violated. It also authorized the parties to suggest to the Probation Office "possible alternatives" to incarceration. *Id.* at 95 (Mar. 5, 2008 Tr 28:12).

In a March 18, 2008 letter, the government stated that Ray "has a right to a speedy re-sentencing" under the Due Process Clause of the Fifth Amendment and the Speedy Trial Clause of the Sixth Amendment. App. 97-98 (Mar. 18, 2008 Letter of Assistant United States Attorney Charles P. Kelly). Because Ray had not yet filed a motion to press that right, the government did not take a position on whether a violation had occurred. The government also reserved comment, pending consideration of Ray's submission, on whether the District Court should impose a non-Guidelines sentence.

On May 2, 2008, Ray filed a motion pursuant to Rule 12 of the Federal Rules of Criminal Procedure to dismiss the indictment based on a violation of her right to a speedy sentencing. In support of her motion, Ray argued that the four-factor test set forth in *Barker v. Wingo* for determining whether a defendant's right to a speedy trial had been violated weighed in favor of finding a violation. 407 U.S. 514, 530 (1972) (describing the factors as "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant"). She emphasized (1) the extraordinary length of the delay in resentencing; (2) the negligence of the government in causing the delay; (3) that she was not a fugitive and did not actively avoid resentencing; and (4) the unfairness of punishing her after her rehabilitation.

The government opposed the motion. In its view, the *Barker* factors weighed against finding a violation. Under the government's analysis, the first factor (the length of the delay) weighed in favor of

Ray, but the second factor (the reason for the delay) weighed "less heavily" in her favor because the government did not "inten[d]" to delay resentencing. App. 126 (May 14, 2008 Letter of Assistant United States Attorney Charles P. Kelly). The other two factors (assertion of the right and prejudice to the defendant) weighed against Ray because she "never sought resentencing and . . . [suffered no] prejudice flowing from the delay." *Id.* at 127. Despite its opposition to Ray's motion, the government nevertheless recommended to the District Court that, in light of her rehabilitation, Ray be sentenced to home detention and probation.

The parties returned to the District Court on June 2, 2008 for further resentencing proceedings. Focusing exclusively on the second *Barker* factor (the reason for the delay), the District Court denied Ray's motion to dismiss the indictment on speedy sentencing grounds. In the view of the District Court, "the primary responsibility for the failure to come back to the [c]ourt[ ] rests with the defendant and [the] office [of the Federal Defenders.]" App. 134. (June 2, 2008 Tr. 5:19-21). It was irrelevant to the District Court that Ray had never been informed of any obligation to return to court because "[i]f she wasn't notified to come into [c]ourt at the time,[5] that's [defense counsel's] responsibility. It doesn't shift to the government, and certainly not to the [c]ourt. I can't chase every defendant around the city." *Id.* at 136 (June 2, 2008 Tr.7:6-10). The District Court reasoned that "[t]he government has so many of these cases. There's no way they can, or I can, keep track of the defendants [or] where they go." *Id.* at 137 (June 2, 2008 Tr. 8:6-8).

Defense counsel then argued for a probationary sentence, pointing to Ray's rehabilitation and the need of her youngest son, who suffered from depression, to have her at home. She specifically opposed a sentence that required Ray to reside in a halfway house because the only halfway house in the Eastern District of New York was "a distance both from [Ray's] job as well as from her home." *Id.* at 146 (June 2, 2008 Tr. 17:15-16). Counsel for the government essentially agreed with defense counsel's presentation, stating "I think defense counsel's statements with regard to sentencing are well put in that here you have an almost unique situation where you can see what the defendant has done with the 16 years since 1992." *Id.* at 151 (June 2, 2008 Tr. 22:13-17).

Keeping its own counsel, the District Court sentenced Ray to a one-day term of imprisonment, followed by three years of supervised release with a special condition that she serve six months in a halfway house. Judgment was entered on June 3, 2008. In that judgment, the District Court explained that it considered Ray's involvement in the mail fraud conspiracy to be "a serious offense" that it would "not treat . . . lightly." App. 169 (Amended Judgment 9). In addition, the District Court reiterated its view that "[a] defendant who obtains the privilege of a release on bail pending resolution of her

---

[5]We infer that the "time" referred to by the District Court is January 14, 1993, when this Court remanded Ray's case to the District Court for resentencing.

6

conviction on appeal has the obligation to surrender to the Court at the termination of an unsuccessful [sic] appeal."[6] *Id.* The District Court criticized Ray's failure to live up to her "responsibility." *Id.*

Ray served her one-day sentence of incarceration and brought this appeal.

## DISCUSSION

Ray offers two arguments on appeal. First, she contends that her sentence was imposed by the District Court in violation of her right to a speedy sentence under the Speedy Trial Clause of the Sixth Amendment and/or the Due Process Clause of the Fifth Amendment. As a remedy for the asserted Sixth Amendment violation, Ray seeks vacatur of her conviction and dismissal of the indictment against her. Second, she argues that the sentence imposed by the District Court was substantively unreasonable, entitling her to resentencing pursuant to *United States v. Booker*, 543 U.S. 220, 226-27 (2005); *see also United States v. Cavera*, 550 F.3d 180, 187-194 (2d Cir. 2008) (en banc). Because we conclude, as explained below, that Ray's due process right to a speedy sentence[7] was violated in this case and that violation requires the vacatur of her sentence (not of her conviction), we need not decide whether the sentence imposed was unreasonable under *Booker*.[8]

---

[6] As explained above, Ray's first appeal to this Court was successful insofar as her case was remanded to the District Court for resentencing.

[7] Judge Leval asks that we note that he does not agree with the conclusion that the Speedy Trial Clause of the Sixth Amendment applies only to the portions of a criminal proceeding pertaining to adjudication of guilt, and not to sentencing. However, because in his view the majority's opinion transfers to the Due Process Clause the office that would otherwise be served by the Speedy Trial Clause, and the difference is therefore essentially one of labels, Judge Leval nonetheless concurs.

[8] We pause to note that Ray seeks principally a vacatur of her conviction, and argues for resentencing only in the alternative. *See* Appellant's Br. 51. Her resentencing argument rests on statutory grounds—that six months in a halfway house was substantively unreasonable under 18 U.S.C. § 3553(a)(1) (requiring sentencing courts to consider "the history and characteristics of the defendant" in imposing sentence). Ordinarily, when presented with two alternatives for the same relief—one statutory and the other constitutional—we will decide on the basis of the statute if at all possible. *See East Coast Lumber Terminal, Inc. v. Babylon*, 174 F.2d 106, 111 (2d Cir. 1949) (L. Hand, *C.J.*) (noting "the accepted rubric that a federal court will not undertake to interpret the federal constitution while it is possible to decide the case upon other grounds"). However, Ray's preferred relief—vacatur of her conviction—is only sought on constitutional grounds. Accordingly, we first consider her constitutional claims.

**A.      Defendants Have No Obligation to Petition the Courts to Impose Sentence.**

The District Court denied Ray's speedy sentence motion because, in its view, "the primary responsibility for the failure to come back to the [c]ourt[ ] rests with the defendant and [the] office [of the Federal Defenders.]" App. 134 (June 2, 2008 Tr. 5:19-21). Ray challenges the District Court's determination, and the government does not defend it, conceding that "it was not the defendant's responsibility to bring about her own resentencing." Appellee's Br. 15 n.6. The parties' view of this issue finds support in the decisions of our sister Circuits. In *United States v. Sanders*, for example, the Sixth Circuit concluded that "[a criminal] defendant does not have a duty to petition the court for resentencing; the onus falls on the government." 452 F.3d 572, 581 (6th Cir. 2006). The Ninth Circuit reached the same conclusion in *United States v. Martinez*, holding that "just as a defendant has no duty to bring himself to trial, he has no affirmative duty to aid in the execution of his sentence." 837 F.2d 861, 866 (9th Cir. 1988) (citing *Barker*, 407 U.S. at 527). We agree with the Ninth Circuit that this conclusion follows, as a matter of logic, from the Supreme Court's statement in *Barker* that "[a] defendant has no duty to bring himself to trial; the State has that duty . . . . [S]ociety has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest." 407 U.S. at 527 (footnotes omitted). We therefore join these courts in holding that a defendant does not bear the burden of seeking her own sentencing. To the extent that the District Court concluded otherwise, it erred.

**B.      The Speedy Trial Clause of the Sixth Amendment**

Pursuant to the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. The right established by the Speedy Trial Clause of the Sixth Amendment has been described by the Supreme Court as "amorphous, slippery, and necessarily relative." *Vermont v. Brillon*, 129 S. Ct. 1283, 1290 (2009) (internal quotation marks omitted). It neither prohibits all delays, nor establishes a strict time limit between the announcement of a charge and the commencement of trial. Whether a criminal defendant's right to a speedy trial has been violated is circumstance-dependent and determined by the multi-factor balancing test established in *Barker*. That test weighs "the conduct of both the prosecution and the defendant" by evaluating several factors, "some" of which include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. The Supreme Court has reiterated recently that "*Barker*'s formulation necessarily compels courts to approach speedy trial cases on an *ad hoc* basis," *Brillon*, 129 S. Ct. at 1291, and reasonable minds may disagree in close cases on whether the balance of factors tips in favor of recognizing a violation of the Speedy Trial Clause.

Although the analysis used to identify a speedy-trial violation is flexible, the remedy is categorical: dismissal of the charges. In *Strunk v. United States*, the Supreme Court made clear that

8

"dismissal [is] . . . the only possible remedy" for a violation of the right protected by the Speedy Trial Clause. 412 U.S. 434, 440 (1973) (internal quotation marks omitted). This remedy, which the Supreme Court recognized was "unsatisfactorily severe" because, in some cases, it would permit the guilty to go free, *id.* at 439 (internal quotation marks omitted), was nevertheless warranted because of the irreparable harm caused by a violation of the right. In the Supreme Court's view, "a prolonged delay may subject the accused to an emotional stress . . . [resulting] from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving—uncertainties that [only] a prompt trial removes." *Id.* The Court also recognized that delay could impair irreparably "the prospect of rehabilitation." *Id.* With the "policies which underlie the right to a speedy trial" in mind, the Supreme Court determined that dismissal of the charges provided the only adequate remedy. *Id.* at 440.

Whether sentencing proceedings are within the ambit of the Speedy Trial Clause is a question that has not been resolved by the Supreme Court, our Court, or most of our sister Circuits. In *Pollard v. United States*, the Supreme Court assumed without deciding that "[the imposition of] sentence is part of the trial for purposes of the [Speedy Trial Clause of the] Sixth Amendment." 352 U.S. 354, 361 (1957). It then denied the speedy sentencing claim on the merits. *Id.* at 362. Following the Supreme Court's example, we treated an appeal pressing a speedy sentencing claim "as we would a speedy trial case," applying the balancing test that would later be adopted by the Supreme Court in *Barker. United States v. Tortorello*, 391 F.2d 587, 589 (2d Cir. 1968). We then denied the claim on the merits. *Id.*; *see also United States v. Roberts*, 515 F.2d 642, 645 & n.4 (2d Cir. 1975) (holding that the "speedy trial clause applies with full force at least until a guilty plea has been entered by the defendant and accepted by the court" but "leav[ing] undecided the question of the application of the speedy trial clause to promptness in sentencing"). More recently, we observed that "[c]ourts . . . acknowledge that the Sixth Amendment guarantee to a speedy trial applies to sentencing," before we denied a speedy sentencing claim on the merits. *United States v. Bryce*, 287 F.3d 249, 256 (2d Cir. 2002).

Most other courts of appeals have adopted the same approach to the question—assuming the existence of the right before denying the claim on the merits. *See United States v. Gibson*, 353 F.3d 21, 27 (D.C. Cir. 2003); *United States v. Nelson-Rodriguez*, 319 F.3d 12, 60 (1st Cir. 2003)[9]; *United States v.*

---

[9] The First Circuit observed that the D.C. Circuit "ha[s] held that the right to a speedy trial extends to th[e sentencing] phase." *Nelson-Rodriguez*, 319 F.3d at 60 (citing *United States v. Yelverton*, 197 F.3d 531, 535-39 (D.C. Cir. 1999)). Our review of the D.C. Circuit's cases compels a different conclusion. *See Gibson*, 353 F.3d at 27 ("Assuming . . . without deciding that the guarantee of a 'speedy and public trial[ ]' also provides a defendant a right to be promptly sentenced, we hold that [defendant] has failed to make the showing under *Barker* necessary to obtain relief." (internal citations omitted)); *Yelverton*, 197 F.3d at 535 ("Neither the Supreme Court nor this court has held that the Sixth Amendment right to a speedy trial reaches sentencing, but in [*Pollard*], the Supreme

*Rothrock*, 20 F.3d 709, 711 (7th Cir. 1994); *United States v. Martinez*, 837 F.2d 861, 866 (9th Cir. 1988); *Perez v. Sullivan*, 793 F.2d 249, 253, 257 (10th Cir. 1986)[10]; *Brady v. Superintendent*, 443 F.2d 1307, 1310 (4th Cir. 1971); *Brooks v. United States*, 423 F.2d 1149, 1151 (8th Cir. 1970).[11]

The Third and Fifth Circuits have held that the Sixth Amendment's Speedy Trial Clause applies to sentencing, but neither court has provided a persuasive explanation of its position. The Third Circuit appears to have based its decision on the fact that many courts, including the Supreme Court, assumed *arguendo* that the right extended to sentencing and others reached that conclusion explicitly. *See Burkett v. Cunningham*, 826 F.2d 1208, 1220 (3d Cir. 1987).[12] Without any further analysis, it then announced, "[w]e now make explicit what we have assumed in our previous cases, that the Speedy Trial [C]lause of the Sixth Amendment applies from the time an accused is arrested or criminally charged up through the sentencing phase of prosecution." *Id.* (internal citation omitted). But this statement does not shed any light on why the Speedy Trial Clause applies to sentencing proceedings.

The Fifth Circuit's position, traced back to its origins, appears to be based on a misreading of *Pollard*. *See United States v. Campbell*, 531 F.2d 1333, 1335 (5th Cir. 1976) ("The Supreme Court has stated that unreasonable delay in sentencing may constitute a violation of a defendant's Sixth Amendment right to a speedy trial." (citing *Pollard*)); *United States v. Howard*, 577 F.2d 269, 270 (5th Cir.

Court assumed that it did.").

[10] More recently, the Tenth Circuit has stated, in a case involving a four-year delay in ruling on a post-sentencing motion for a new trial, that "[t]he Sixth Amendment guarantees all criminal defendants the right to a speedy trial; we have applied this right from arrest through sentencing." *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006).

[11] The state of the law in the Sixth Circuit is less clear. *Compare United States v. Juvenile Male*, 939 F.2d 321, 325 n.6 (6th Cir. 1991) (noting that Sixth Circuit decisions had "perpetuated *Pollard*'s assumption" that the Speedy Trial Clause applied to delays in sentencing) *with Sanders*, 452 F.3d at 577 ("Although the [Supreme] Court has never directly ruled on [*Barker*'s] applicability to delays between trial and sentencing, the majority of circuits, including this one, use it for these claims." (internal citation omitted)). The D.C. Circuit counts the Sixth Circuit among those courts—including the Third and Fifth Circuits—that have "held the Sixth Amendment applicable to sentencing." *Gibson*, 353 F.3d at 26 n.4.

[12] The Third Circuit appears to have counted the Eighth and Ninth Circuits among those which have held that the Speedy Trial Clause extends to sentencing proceedings. *Burkett*, 826 F.2d at 1220. We disagree with that assessment. *See Martinez*, 837 F.2d at 866 (9th Cir.) ("This court has treated the imposition of sentence as within the speedy trial guarantee, but has refrained from expressly recognizing it as such." (internal citations omitted)); *Brooks*, 423 F.2d at 1151 (8th Cir.) ("It is unnecessary for us to make a decision at this time as to whether an unreasonable delay in sentencing constitutes an infringement of a . . . constitutional right.").

1978) (relying on *Campbell* without elaboration); *United States v. Abou-Kassem*, 78 F.3d 161, 167 & n.25 (5th Cir. 1996) (relying on *Howard* without elaboration); *United States v. Peters*, 349 F.3d 842, 850 & n.34 (5th Cir. 2003) (relying on *Abou-Kasem* without elaboration). Accordingly, no federal court of appeals has undertaken a rigorous examination of whether the Speedy Trial Clause of the Sixth Amendment extends to a delay in sentencing.

This appeal requires us to answer this question directly.[13] In doing so, we first consider the precedents which bind us as an intermediate appellate court—namely, the holdings of the Supreme Court and those of prior panels of this Court. Insofar as those precedents fail to provide an answer to this question, we examine the original meaning of the Speedy Trial Clause and consider contemporary criminal procedure in light of the original understanding of the Clause. Finally, we consider the interests protected by the Speedy Trial Clause and whether they exist with equal force in sentencing proceedings.

While no precedent of the Supreme Court instructs whether the Speedy Trial Clause includes sentencing proceedings, we believe that two decisions provide useful guideposts. First, as noted above, the Supreme Court held in *Strunk* that the only remedy for a violation of the Speedy Trial Clause is the dismissal of the charges. 412 U.S. at 440. Second, in *Bozza v. United States*, the Supreme Court expressed its "reject[ion of] the 'doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing the sentence.'" *Bozza v. United States*, 330 U.S. 160, 166 (1947) (quoting *In re Bonner*, 151 U.S. 242, 260 (1894)). Insofar as a delay in sentencing constitutes an "error in passing . . . sentence," *id.*, *Bozza* suggests that vacatur of the conviction would be an inappropriate remedy for a delay in sentencing. Taken together, these cases are not in tension so long as the Speedy Trial Clause is not read to extend to sentencing proceedings. If the Speedy Trial Clause does extend to sentencing, however, then the remedy set forth in *Strunk*—dismissal of the charges—comes into conflict with the teaching of *Bozza* and *In re Bonner* that the guilty should not go free simply because of a sentencing error.

Our precedents, as noted above, have assumed *arguendo* that the Speedy Trial Clause encompasses sentencing proceedings, so they do not govern our determination of this issue. We are nevertheless guided by the observation of another panel of this Court in *Tortorello* that the remedy for a delayed sentencing proceeding cannot be the dismissal of the indictment. 391 F.2d at 588-89 ("On this

---

[13] Although the parties concede that the Speedy Trial Clause applies to sentencing proceedings, we are not bound by their concession of that legal question. *See Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99 (1991) (Marshall, *J.* for a unanimous Court) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

appeal appellant complains of the delay between plea and sentencing. He recognizes that because he pleaded guilty, it would not be appropriate to remedy the delayed sentence by dismissing the indictment." (citing *Bozza*, 330 U.S. at 166; *Bonner*, 151 U.S. at 260)). While we are not bound by this observation, based as it is on a stipulation by a defendant in the particular circumstances of the earlier case, we nevertheless find it useful because it applies *Bozza* and *Bonner* to a speedy sentence challenge.

Because no holding of the Supreme Court or our Court resolves the question of whether the Speedy Trial Clause applies to sentencing proceedings, we must construe the text of the Sixth Amendment. In so doing, we apply the time-tested methodology of "[examining] the words of the Constitution . . . in their historical setting," *United States v. Classic*, 313 U.S. 299, 317 (1941), to determine the content of a constitutional provision. We proceed on the assumption that "[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary [meaning] as distinguished from technical meaning." *United States v. Sprague*, 282 U.S. 716, 731 (1931); *see also Gibbons v. Ogden*, 22 U.S. 1, 188 (1824) ("[T]he enlightened patriots who framed our constitution, and the people who adopted it, must be understood to have employed words in their natural sense, and to have intended what they have said."). As in *Gibbons*, our construction of the applicable constitutional provision here turns on "the meaning of [a] word," 22 U.S. at 189. In this case, that word is "trial."

Our inquiry into the original meaning of the word "trial" is aided by the Supreme Court's analysis of the Sixth Amendment right to trial by jury. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court described the relationship between a verdict of a jury after a criminal trial and the sentence imposed by a judge in subsequent proceedings. Examining the historical function of the jury trial, the *Apprendi* Court explained that "trial by jury has been understood to require that 'the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours . . . .'" *Apprendi*, 530 U.S. at 477 (quoting 4 W. Blackstone, *Commentaries on the Laws of England* 343 (1769)) (alteration in opinion, emphasis omitted). Sentencing, on the other hand, followed the verdict reached by the jury at trial. *See id.* at 479 ("'The substantive criminal law tended to be sanction-specific; it prescribed a particular sentence for each offense. The judge was meant simply to impose that sentence.'" (quoting John Langbein, *The English Criminal Trial Jury on the Eve of the French Revolution*, in The Trial Jury in England, France, Germany 1700-1900, 36-37 (A. Schioppa ed. 1987)). Under this historical analysis, the jury trial served to determine the facts necessary for the imposition of sentence, but did not itself impose that sentence. Rather, the sentence was determined in later proceedings based on the facts found at trial. *See also Blakely v. Washington*, 542 U.S. 296, 309 (2004) (stating that a jury trial serves the "traditional function of finding the facts essential to lawful imposition of the penalty").

This distinction between trial and sentencing finds support in the writings of Blackstone, which were published in England in the mid-eighteenth century.[14]  The very structure of his *Commentaries on the Laws of England* separate trial from sentencing.  Chapter Twenty-Seven of Book Four, "Of Trial and Conviction," describes the procedures for determining guilt or innocence, while Chapter Twenty-Nine, "Of Judgment and It's Consequences," examines the imposition of penalties after conviction.  As described by Blackstone, the imposition of punishment was not considered part of the criminal trial; rather, it constituted a separate phase of criminal proceedings that followed the conclusion of the trial.  The opening sentences of Chapter Twenty-Nine make this distinction clear:

> We are now to consider the next stage of criminal prosecution, after trial and conviction are past, . . . which is that of *judgment.*  For when, upon a capital charge, the jury have brought in their verdict, guilty, in the presence of the prisoner; he is either immediately, or at a convenient time soon after, asked by the court, if he has any thing to offer why judgment should not be awarded against him.  And in case the defendant be found guilty of a misdeme[a]nour, (the trial of which may, and does usually, happen in his absence, after he has once appeared) a *capias* is awarded and issued to bring him in to receive his judgment; and, if he absconds, he may be prosecuted even to outlawry.

4 W. Blackstone, Commentaries on the Laws of England 368 (1769).

Early decisions of American courts reflect this distinction between trial and sentencing.[15]  *See Republica v. Doan*, 1 U.S. 86, 91 (Pa. 1784) ("[M]ight an offender, who confessed the fact in court, by pleading guilty to the indictment, after sentence, complain that he had not a trial by jury[?]  By refusing to take his trial, he tacitly seems to have admitted himself guilty."); *Kennedy v. Commonwealth*, 4 Va. 510, 510 (1826) ("[A] motion was made for a new trial, which motion was over-ruled, and the petitioner sentenced to ten years imprisonment in the Penitentiary."); *Burgess v. Commonwealth*, 4 Va. 483, 486 (1825) ("[O]n the third day after the conviction, the prisoner by his Counsel, moved Errors in arrest of

---

[14] Although he wrote decades before the American Constitutional Convention, Blackstone is often cited by the Supreme Court in its search for "original meaning" because his "works constituted the preeminent authority on English law for the founding generation," *Alden v. Maine*, 527 U.S. 706, 715 (1999).

[15] There is some historical evidence that the American colonists rejected sentencing by judges out of a distrust of English magistrates, if not English law.  *See, e.g.*, Morris B. Hoffman, *The Case for Jury Sentencing*, 52 Duke L.J. 951, 963-65 (2003) (arguing that "[s]everal colonies rejected what they perceived was the traditional English rule of judge sentencing, . . . involv[ing] their jurors in both capital and noncapital sentencing" and that "[m]ost states continued the mixed colonial tradition of jury sentencing" into the nineteenth century).  However, regardless of whether sentencing was imposed by judges or by juries, the historical record is consistent with our view that trial and sentencing were distinct phases of criminal prosecution.

judgment, and also for a new trial; both of which motions, were overruled, and the prisoner had sentence to be hanged."); *Commonwealth v. Pease*, 16 Mass. 91, 94 n.6 (1819) ("A promissory note given after trial and conviction for a misdemeanor, and before sentence, in pursuance of a recommendation by the Court to compromise the matter, is valid."); *Commonwealth v. Drew*, 4 Mass. 391, 399 (1808) ("On the last day of the term, Drew was brought up to receive his sentence, when his counsel moved the Court to delay giving judgment, because they had evidence that Richard King, who was a material witness for the government, had declared before the trial, that he would hang the prisoner by his testimony if he could, of which declaration he had no knowledge until after the trial.").

In light of this historical evidence, we conclude that the word "trial," as understood at the time of the Founding, would not have encompassed sentencing proceedings.

The passage of two centuries since the Framing era has not changed the basic divide between trial and sentencing. The modern usage of the word "trial" still does not include sentencing proceedings. A trial resolves disputed questions of law and fact; it is "[a] judicial examination and determination of issue between parties to [an] action, whether they be issues of law or of fact, before a court that has jurisdiction." Black's Law Dictionary 1504 (6th ed. 1990). Sentencing, on the other hand, is "[t]he postconviction stage of the criminal justice process in which the defendant is brought before the court for imposition of sentence." *Id.* at 1363. In the criminal context, the disputed question pertains to a defendant's guilt. If guilt is proven at trial beyond a reasonable doubt, a conviction is obtained. At that point, the disputed issue has been resolved, and the matter proceeds to the post-conviction sentencing phase—the substance of which, as here, is not necessarily disputed by the parties.

The Federal Rules of Criminal Procedure also indicate that sentencing proceedings are not part of criminal trials. Rules 23 through 31 pertain to "Trials," concluding with requirements applicable to the "Jury Verdict." "Sentencing and Judgment," on the other hand, are addressed in Rule 32, which is grouped under "Post-Conviction Procedures." The structure of the Rules reflects an understanding that trials conclude with the announcement of a verdict of guilty or not guilty, and sentencing takes place after trial. The warnings required by Rule 11 underscore this point. A defendant who wishes to plead guilty must be advised that he is waiving his right to a jury trial. Fed. R. Crim. P. 11(b)(1)(C). The procedural rule governing sentencing does not distinguish among pleas, jury verdicts, or a judge's findings in a bench trial; they are all pre-sentence proceedings. *See* Fed. R. Crim. P. 32 (sentencing proceedings do not vary based on whether conviction is obtained by guilty plea or jury verdict); *cf. Blakely*, 542 U.S. at 310 ("When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding."). If the meaning of "trial" included sentencing proceedings, then a trial waiver would be expected to have some impact on sentencing. Because there is no difference between sentencing

14

proceedings that follow a jury verdict of guilty and those that follow a plea of guilty, we can infer that the waiver of *trial* rights does not extend to *sentencing*.

It is also notable that Congress did not include sentencing proceedings within the time limits established by the Speedy Trial Act of 1974, Pub. L. 93-619 (1975), 88 Stat. 2076 (codified at 18 U.S.C. § 3161 *et seq.*). *See Bryce*, 287 F.3d at 256 ("The Speedy Trial Act provides that a defendant shall be afforded a trial within seventy days of indictment, first appearance, or after remand from an appeal. The Act makes no mention of sentencing, and creates no right to a 'speedy sentencing.'" (citation omitted)); *United States v. Parks*, 285 F.3d 1133, 1143 (9th Cir. 2002) ("The Speedy Trial Act addresses the time requirements between indictment and trial, but does not address sentencing."). If trials were generally understood to include sentencing proceedings, we would expect the Speedy Trial Act to apply to those proceedings. That the Act contains no reference to sentencing whatsoever suggests that Congress did not consider sentencing proceedings to be components of criminal trials.

A brief survey of recent decisions indicates that judges of our Court view trials and sentencing proceedings as distinct, separate stages of a criminal prosecution. *See, e.g.*, *United States v. Delis*, 558 F.3d 177, 177 (2d Cir. 2009) (appeal from "conviction [and] . . . sentence of time served plus a $10 fine entered *after* a bench trial" (emphasis added)); *United States v. Marcus*, 538 F.3d 97, 98 (2d Cir. 2008) ("[A district court] sentenc[ed] defendant principally to a term of 108 months' imprisonment *following* conviction *after* a jury trial." (emphases added)); *United States v. Thompson*, 528 F.3d 110, 114 (2d Cir. 2008) ("[Defendants] appeal from judgments of conviction and sentence entered, *following* a jury trial, in the United States District Court for the Southern District of New York." (emphasis added)); *United States v. Wexler*, 522 F.3d 194, 197 (2d Cir. 2008) ("[Defendant] appeals from a judgment of conviction and sentence . . . convicting [defendant], *after* a jury trial, of all seventeen counts of an indictment." (emphasis added)).

Finally, the interests protected by Speedy Trial Clause are not directly relevant to sentencing proceedings. As described by the Supreme Court, the "harm[s]" addressed by this provision include: (1) "oppressive pretrial incarceration," (2) "anxiety and concern of the accused," and (3) "the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett v. United States*, 505 U.S. 647, 654 (1992) (internal quotation marks and brackets omitted). The Eighth Circuit has observed that these harms do not arise when there is a delay between conviction and sentencing. In that court's view, "the sensitive concerns which surround the necessity of a speedy trial on the merits of a case generally are not applicable when the delay is between conviction and sentencing. There exists here no concern over 'oppressive incarceration' before trial, 'anxiety' over public accusation before trial, or any 'impairment' over the petitioner's ability to defend himself." *Brooks*, 423 F.2d at 1152-53. We agree in large part with the Eighth Circuit's observation.

First, there is no risk of "oppressive *pretrial* incarceration," *Doggett*, 505 U.S. at 654 (emphasis added), at sentencing because the incarceration, if any, occurs after conviction. When a defendant is merely charged with a crime, and on that basis detained, there is a legitimate concern that one who is innocent might be deprived of his liberty. A guilty plea, jury verdict, or a judge's findings in a bench trial mitigate that concern with respect to an individual who is no longer merely accused, but convicted of an offense. Second, one who has been *convicted* of a crime does not share the same "anxiety and concern," *id.*, as one who has been only *accused* of a crime. The anxiety and concern relevant to the Speedy Trial Clause arise from the "cloud of suspicion" hovering over one who is "presumptively innocent." *Erbe v. State*, 350 A.2d 640, 648 (Md. 1976) (internal quotation marks omitted). Upon a finding of guilt, however, that "presumption of innocence dissipates," and a defendant who "awaits sentencing . . . may still be under a cloud, but it is not a cloud of 'public accusation;'" rather, it is a "cloud of public guilt." *Id.* (internal quotation marks omitted). The "anxiety and concern," *Doggett*, 505 U.S. at 654, relevant to the Speedy Trial Clause is that of the accused, not that the convicted. Third, the passage of time that might impair a criminal defense, because of the loss of exculpatory evidence, does not undermine a defendant's ability to argue for leniency at sentencing. *See Sanders*, 452 F.3d at 580 ("[W]hen all that remains of a case is the imposition of a sentence, the danger of losing witnesses or other evidence needed to mount an adequate defense is minimized, if not eliminated completely."). It is true that sentencing proceedings turn, in part, on the facts of a crime, but those facts are relevant to the imposition of punishment, not to the determination of guilt. Allegedly exculpatory facts introduced at sentencing proceedings do not alter the fact of conviction. Even so, we recognize that the passage of time could impair a defendant's ability to make a showing that his criminal conduct warrants a lesser sentence. For example, he may be deprived of evidence showing that he played a minor role in the offense in question.

An examination of the harms arising from delayed sentencing shows that they are quite different from those animating the Speedy Trial Clause. One eminent treatise has explained that "[d]elay in sentencing may leave the defendant, as well as the victim, in limbo concerning the consequences of conviction. It postpones the commitment of the defendant to corrections facilities, may have a detrimental effect on rehabilitation, and suspends the appellate review of error." 3 Charles Alan Wright *et al.*, Federal Practice & Procedure: Criminal § 521.1 (3d ed. 2004). We recognize the force of these concerns and do not seek to minimize them. But it is no disparagement of their importance to observe they are not the same as those that animate the Speedy Trial Clause.

In defense of the view that trials encompass sentencing proceedings, Ray relies on the Supreme Court's observation in *Bradley v. United States* that "[i]n the legal sense, a *prosecution* terminates only when sentence is imposed." 410 U.S. 605, 609 (1973) (emphasis added); *see* Appellant's Br. 28. We have no quarrel with the proposition that a "prosecution" does not terminate until a sentence is imposed and a judgment of conviction entered, but that proposition has no bearing on when a "trial" terminates. "Trial" is not synonymous with "criminal prosecution." Indeed, a criminal prosecution includes many

16

phases, some of which occur pre-trial (*e.g.*, arraignment) and some of which occur post-trial (*e.g.*, sentencing). That a criminal *prosecution* does not terminate until a sentence is imposed—or an acquittal is obtained—simply does not shed any light on the duration of a "trial."

In light of the foregoing analysis, it is apparent that sentencing proceedings and trials are separate and distinct phases of criminal prosecutions. Accordingly, we hold that the Speedy Trial Clause of the Sixth Amendment, which governs the timing of trials, does not apply to sentencing proceedings.

## C.     The Due Process Clause of the Fifth Amendment

Although we conclude that a delay in sentencing does not run afoul of the Speedy Trial Clause of the Sixth Amendment, that does not mean that there is no constitutional right to a "speedy" sentencing. The Supreme Court has recognized, for example, that the Due Process Clause of the Fifth Amendment "has a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *see also Doggett*, 505 U.S. at 666 (Thomas, *J.*, dissenting) ("[T]he Due Process Clause always protects defendants against fundamentally unfair treatment by the government in criminal proceedings."). A delay in criminal proceedings that "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency," can, depending on the circumstances, constitute a violation of the Due Process Clause. *Lovasco*, 431 U.S. at 790 (internal quotation marks and citations omitted). In the same vein, another panel of our Court has recognized that "[a]n indictment brought within the time constraints of the statute [of limitations] may nevertheless violate due process where pre-indictment delay has been shown to cause 'substantial prejudice' to the defendant's ability to present his defense and 'the delay was an intentional device to gain [a] tactical advantage over the accused.'" *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999) (quoting *United States v. Marion*, 404 U.S. 307, 324 (1971)).

The Federal Rules of Criminal Procedure also protect criminal defendants from unreasonable delays in sentencing. Pursuant to Rule 32(b)(1), "[t]he court must impose sentence without unnecessary delay." The directive set forth in Rule 32, taken together with the general prohibition of "oppressive delay" established by the Due Process Clause, *Lovasco*, 431 U.S. at 789, protects criminal defendants from unreasonable delays between conviction and sentencing.

In order to determine whether a defendant has been deprived of her due process right to a prompt sentencing, we "must consider [1] the reasons for the delay as well as [2] the prejudice to the accused." *Id.* at 790; *see also Sanders*, 452 F.3d at 580 ("Though the *Lovasco* line of cases addresses pretrial delays, we find it equally applicable to [delays in resentencing]. As in the time period before the Sixth Amendment right to a speedy trial attaches, the primary concern after the right ceases to apply is 'oppressive delay.'"). Under this test, "prejudice is . . . necessary but not sufficient" to prove a due

17

process violation, *Lovasco*, 431 U.S. at 790; *see also DeMichele v. Greenburgh Cent. Sch. Dist.*, 167 F.3d 784, 790 (2d Cir. 1999) ("[A]ctual prejudice does not alone prove a due process violation."). Instead, a defendant must show both prejudice and an unjustified reason for the delay in order to prove a due process violation. *See United States v. Brown*, 498 F.3d 523, 528 (6th Cir. 2007) ("We have interpreted . . . *Lovasco* to hold that both conditions (improper reasons for delay and prejudice) are necessary for a due []process violation."). These considerations, moreover, are not independent prongs of a two-part test to be evaluated in isolation from each other. Rather, they are related factors to be weighed in light of each other and the surrounding circumstances. *See Pollard*, 352 U.S. at 361 (stating, in the context of sentencing delay, that "[w]hether delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends on the circumstances"); *Perez v. Sullivan*, 793 F.2d 249, 254 (10th Cir. 1986) (stating, in the context of sentencing delay, that the pertinent "factors are to be balanced in light of the facts and circumstances of the case"); *cf. Barker*, 407 U.S. at 533 (stating that factors relevant to a "finding of a deprivation of the right of speedy trial . . . are related factors and must be considered together with such other circumstances as may be relevant"); *United States v. L'Allier*, 838 F.2d 234, 238 (7th Cir. 1988) ("A court must . . . weigh the actual prejudice to the defendant against the reasons for the delay to determine whether a particular indictment must be dismissed pursuant to the due process clause. Thus, even if [defendant] can show actual and substantial prejudice to his defense as a result of the sixteen month pre-indictment delay, the indictment will not be dismissed if there was a legitimate reason for the delay." (citation omitted)).

### 1. Reasons for the Delay

Our analysis of the reasons for the delay in this case is informed by the observation of the Supreme Court that, while "[d]eliberate delay to hamper the defense weighs heavily against the prosecution[, m]ore neutral reasons such as negligence or overcrowded courts weigh less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Brillon*, 129 S. Ct. at 1290 (internal quotation marks, citations, and brackets omitted). Here, the government "has accepted its responsibility for the delay" in Ray's resentencing and does not attempt to provide any justification for the fifteen year period that has elapsed between our remand of this case and Ray's resentencing. Appellee's Br. 15. Our review of the record does not cause us to question the government's concession. The record does not show that the government intended to cause this delay or that the delay was part of a prosecution strategy to gain advantage or leverage over Ray. Rather, it appears that Ray's case was allowed to languish due to ordinary negligence on the part of the government, a fact that weighs against it.

We also consider whether Ray should bear responsibility for the delay. Ray concedes that between 1993 and 2008 she did not request resentencing. To the extent she seeks in this appeal to have her conviction vacated and the indictment dismissed, her failure, or her attorney's failure, to seek more prompt sentencing weighs heavily against her. *See Brillon*, 129 S. Ct. at 1290-91.

18

Nonetheless, as stated above, it is not the defendant's duty, or that of her attorney, to see that she is speedily prosecuted and sentenced. *See, e.g.*, *Barker*, 407 U.S. at 527. To the extent the defendant is seeking not to vacate her conviction by reason of the delay but seeking rather a modification of the terms of her sentence by reason of the prejudice to her from imposing a custodial sentence fifteen years after her conviction, notwithstanding her impressive rehabilitation, we see no reason to impose blame, fault, or responsibility on her for the delay, on the mere basis of the fact that she did not take earlier steps to be sentenced more rapidly.

## 2.     **Prejudice**

To prove a due process violation as a result of a sentencing delay, the prejudice claimed by the defendant, absent extraordinary circumstances, must be substantial and demonstrable. *See Perez v. Sullivan*, 793 F.2d at 256 ("Because the rights of society proportionately increase [after a defendant is convicted], the prejudice claimed by the defendant [objecting to a sentencing delay] must be substantial and demonstrable."); *Nelson-Rodriguez*, 319 F.3d at 61 (in the context of a speedy sentencing claim, stating that "the courts have great reluctance to find a speedy trial deprivation where there is no substantial and demonstrable prejudice").

The delay of fifteen years between our order remanding this case for resentencing and the time when Ray was resentenced is, without doubt, extraordinary—a fact that does not alone mandate the result we reach today, but that weighs in favor of it. In that time, Ray has undergone what appears to be a complete rehabilitation: she has remarried, raised a family, built a career, paid income taxes, and obtained higher education. To remove her from her current life and compel her to reside for six months in a halfway house would undermine her successful rehabilitation.[16] In this regard, we agree

---

[16] According to the Federal Bureau of Prisons, halfway houses (also known as "Residential Re-entry Centers" or "RRCs") facilitate reintegration into the community—an interest not implicated here—by "provid[ing] a safe, structured, supervised environment, as well as employment counseling, job placement, financial management assistance, and other programs and services." Federal Bureau of Prisons, Community Corrections, http://www.bop.gov/locations/cc/index.jsp (last visited July 27, 2009). The restrictions imposed on the liberty of a halfway house resident are substantial:

> RRC staff monitor an inmate's location and movement 24 hours/day. The contractor authorizes an inmate to leave the RRC through sign-out procedures for approved activities, such as seeking employment, working, counseling, visiting, or recreation. Staff continue to monitor inmates by visiting the approved locations (home or work) and/or making random phone contacts at different times during the day. Staff also administer random drug and alcohol tests for those inmates returning to the RRC from an approved activity and conduct random in-house counts throughout the day.

with the observations of the Eighth Circuit that "a defendant should be allowed to do his time, live down his past, and reestablish himself. Permitting a sentence to go unexecuted does not encourage rehabilitation." *Shelton v. Ciccone*, 578 F.2d 1241, 1245 (8th Cir. 1978). Where, as here, incarceration is threatened against someone who for fifteen years has "liv[ed] openly under [her] own name and was gainfully employed," it "interrupt[s] [her] reintegration into the community," in a way that the immediate imposition of sentence would not have. *Id.*; *see also Howard*, 577 F.2d at 270 (stating that sentencing delay "disserves a basic notion that, once convicted, an offender should be able to serve his sentence and be done with it"); *United States v. Mercedes*, No. 90 CR. 450, 1997 WL 458740, at *2 (S.D.N.Y. Aug. 12, 1997) ("Delayed execution of a sentence interrupts the defendant's reintegration into the community and thus frustrates effective rehabilitation."); 3 Charles Alan Wright *et al.*, Federal Practice & Procedure: Criminal § 521.1 (4th ed. 2008) (listing "a detrimental effect on rehabilitation" among the harms caused by delayed sentencing); *cf. DeWitt v. Ventetoulo*, 6 F.3d 32, 35 (1st Cir. 1993) (holding that reopening of defendant's sentence to impose greater penalty violated due process where, *inter alia*, defendant had "laid down new roots in society, acquiring a job and reestablishing family ties").

The government argues that the fifteen-year delay between remand and resentencing only benefitted Ray because it allowed her to develop "highly persuasive evidence of rehabilitation" by leading a law-abiding and productive life over the last fifteen years. Appellee's Br. 19. Ray responds, *inter alia*, that ordering her to spend six months in a halfway house *now* will destabilize the new, law-abiding life that she has built for herself. It cannot be gainsaid that, had she been promptly resentenced in 1993 when we instructed the District Court to do so, she would not now face this serious disruption. The imposition of a custodial penalty at this stage of her life is far more disruptive to Ray's rehabilitation than it would have been fifteen years ago, or even several years after her conviction. This disruption—after Ray has successfully rebuilt her life for fifteen years, establishing strong family and community ties while making no effort to evade detection by the government—would seriously prejudice Ray, and weighs heavily against the government.

### 3. Balance of the Factors

Ray has been subject to a sentencing delay of extraordinary length which threatens serious disruption to her rehabilitation and to the law-abiding and productive life she has led for the last fifteen years. The government's negligence is a "more neutral reason," *Barker*, 407 U.S. at 531, for the delay, not counting as heavily against it as in a case where the government has sought delay for strategic advantage. But even if we were to find that Ray bears at least some responsibility for the situation in failing to request a timely resentencing, the prejudice here is truly significant, considering Ray's successful and prolonged rehabilitation, and the upset that a custodial sentence would now entail.

---

*Id.*

We conclude that in light of the reasons for the delay and the prejudice established by Ray, and considering all the circumstances, the delay in Ray's resentencing violated the Due Process Clause of the Fifth Amendment. We emphasize the narrowness of this holding. Even substantial delays in sentencing do not in all circumstances amount to a due process violation, especially when a defendant has not requested timely sentencing and is unable to establish prejudice of the sort implicated here. Society has important interests at stake in seeing sentences carried out, and the purposes of sentencing, including not just rehabilitation but also deterrence, incapacitation, and retribution, are not necessarily fulfilled by the mere passage of time. This is an unusual case where the dictates of fundamental fairness clearly compel us to conclude that Ray's rights were violated. But in many other circumstances in which sentencing is delayed, even for a considerable period, requiring a convicted defendant to be sentenced would not be unfair, much less fundamentally so. *Cf. Lovasco* 431 U.S. at 795-96 (concluding that even when preindictment investigative delay has caused some prejudice to the defense, compelling a defendant to stand trial would not be fundamentally unfair when the delay was not for strategic reasons).

## 4.     Remedy for the Violation

"The appropriate remedy for a proven due process violation often depends on the stage at which the violation is found and the relief sought." *Brody v. Village of Port Chester*, 345 F.3d 103, 119 (2d Cir. 2003). After a due process violation has occurred, courts endeavor to fashion relief that counteracts the prejudice caused by the violation. *See, e.g.*, *Burkett*, 826 F.2d at 1222 ("The normal remedy for a due process violation is not discharge; rather, a court faced with a violation should attempt to counteract any resulting prejudice demonstrated by a petitioner."). The Sixth Circuit has stated that "suspension of the remainder of the sentence" is the appropriate remedy for a due process violation arising from a delayed resentencing. *Sanders*, 452 F.3d at 580-81. We need not decide whether all speedy sentence violations warrant that relief in order to conclude that vacatur of the remainder of the sentence is appropriate in this case. The violation of Ray's due process right has prejudiced her insofar as a delayed custodial sentence threatens to undermine her successful rehabilitation. To remedy that harm, the appropriate relief is to release her from any requirement that she submit to a custodial sentence. Accordingly, we conclude that the appropriate remedy in this case is the vacatur of Ray's sentence insofar as it imposes a six-month term of residence in a halfway house.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the District Court, in part, and **VACATE** the judgment insofar as it imposes a six-month term of residence in a halfway house. We direct the Clerk of the United States District Court for the Eastern District of New York to amend the judgment and close the case.