*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2012-132

FEBURARY TERM, 2013

| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Chittenden Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Dennis Rose | } | DOCKET NO. 2813-7-10 Cncr |

Trial Judge: Michael S. Kupersmith

In the above-entitled cause, the Clerk will enter:

Defendant appeals from his conviction of aggravated assault following a jury trial. He argues that: there was insufficient evidence to support his conviction; the court committed reversible error in instructing the jury; and his due process rights were violated by a sentencing delay. We affirm.

Defendant was charged with violating 13 V.S.A. § 1024(a)(5) in July 2010. The information alleged that defendant, "while armed with a deadly weapon, a machete, threatened to use the deadly weapon on other persons." The following evidence was presented at defendant's January 2011 trial. An eyewitness testified that on the morning in question, he was sitting in his car in Burlington. He observed a small group of individuals congregating behind his car. He heard someone say, "Looks like he's going to start some shit." He then saw a black male get out of a car and chase three other men down the street with a machete. Defendant had an aggressive posture and raised the machete up in the air as he chased them. Defendant chased the men for approximately fifty feet, coming within ten feet of them. Defendant then returned to his vehicle and drove away. The witness wrote down defendant's license plate number and called 911.

Four Burlington police officers who responded to the 911 call also testified. They indicated that they stopped defendant's vehicle within a minute of the 911 call. Defendant admitted chasing the men, and a machete was found in the backseat of his vehicle. Defendant presented testimony from a woman who was riding in the car with him that morning. Defendant had a child with this woman. The woman testified that defendant had used the machete to try to remove something from underneath the car. She stated that she did not see defendant chase anyone down the street. The jury found defendant guilty. Following the imposition of sentence in March 2012, defendant appealed.

Defendant first argues that there was insufficient evidence to show that he intended to threaten anyone. See 13 V.S.A. § 1024(a)(5) (a person is guilty of aggravated assault if he "is armed with a deadly weapon and threatens to use the deadly weapon on another person"). Defendant failed to preserve this argument. While he moved for a judgment of acquittal at the close of the State's case, he did not renew his motion at the close of evidence or in a post-trial motion. He thereby waived any challenge to the sufficiency of the evidence. See State v.

Crannell, 170 Vt. 387, 407 (2000) (failure to renew motion for judgment of acquittal at close of evidence or file a timely post-verdict motion forecloses appellate review of any issue as to sufficiency of evidence).

Defendant next argues that the court committed reversible error in instructing the jury on the element of intent. According to defendant, the court overemphasized the role of circumstantial evidence and made excuses for the State's lack of direct evidence. Defendant suggests that through its instruction, the court impermissibly commented on the evidence and impermissibly interfered with the function of the jury. Defendant maintains that this error was not harmless because the court essentially told the jury that it did not have to assess or weigh the evidence on intent, and that whatever was presented was sufficient to prove the needed element.

To prevail on this claim, defendant must show that "the charge was both clearly erroneous and prejudicial." Knapp v. State, 168 Vt. 590, 591 (1998) (mem.). We consider the jury instructions in their entirety, and if the "charge as a whole breathes the true spirit and doctrine of the law and there is no fair ground to say that the jury has been misled, it ought to stand." Id. (quotation omitted).

We find no error. The court instructed the jury that the State needed to prove each of the essential elements of the crime beyond a reasonable doubt. As to whether defendant threatened to use a deadly weapon on other persons, the court explained that:

> To threaten another person means to communicate by words or deeds, or both, an intent to inflict harm upon that other person. . . . In other words, the State must prove that it was the defendant's conscious objective or goal to threaten another person.
>
> Intent is usually proved indirectly, rather than directly. You may draw conclusions about the defendant's intent from his conduct and from the surrounding circumstances. The threat may be explicit. For example, it may be a direct verbal threat. The threat may also be implicit, consisting of words or conduct which a reasonable person would understand to be a threat. Whether the threat was explicit or implicit, the State must have proven that [defendant] communicated an intent to commit harm upon other persons and was armed with a deadly weapon when he did so.

The court also reiterated, among other things, that the State had the burden of proving defendant's guilt beyond a reasonable doubt, and that the burden never shifted to defendant.

The court's instruction on intent is consistent with our holdings. See, e.g., State v. Alexander, 173 Vt. 376, 386 (2002) (observing that "[t]he element of intent . . . is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence" (quotation omitted)). It did not constitute an impermissible comment on the evidence, and the court in no way directed the jury's verdict on this element. Instead, the court made clear that intent could be proved through direct or indirect evidence, and the jury remained free to decide based on all of the evidence produced at trial if the State had met its burden of proof on this element.

Finally, defendant asserts that he was denied due process because his sentencing was delayed for approximately nine months. Relying on a two-part test enunciated in United States

v. Ray, 578 F.3d 184 (2d Cir. 2009), defendant argues that the delay cannot be attributed to him and that he incurred substantial prejudice from the delay. See id. at 199 ("In order to determine whether a defendant has been deprived of her due process right to a prompt sentencing, we 'must consider (1) the reasons for the delay as well as (2) the prejudice to the accused.' " (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977))). As to the latter factor, defendant argues that he had to wait to exercise his right to appeal and that he was denied the right to have the state court consider whether to make his sentence concurrent with his federal sentence. Defendant also suggests that requiring him to serve his state sentence disrupts his ability to continue living a law-abiding, productive life with his family.

As reflected above, the Ray court held that "a defendant must show both prejudice and an unjustified reason for the delay in order to prove a due process violation." Id. We note that this Court has similarly recognized that excessive delay can rise to the level of a denial of due process of law. State v. Dean, 148 Vt. 510, 514 (1987) (recognizing possibility of due process violation but rejecting as speculative defendant's claim that he suffered prejudice from trial court's twenty-month delay in ruling on his motion for sentence reconsideration); State v. Hall, 145 Vt. 299, 307-08 (1984) (finding that defendant failed to show any substantial prejudice resulting from seventeen-month delay in producing transcript of his pretrial motion to suppress evidence, and thus concluding that he had not been denied due process of law); see also Lovasco, 431 U.S. at 789-90 (recognizing that "the Due Process Clause has a limited role to play in protecting against oppressive delay," and that "the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused"). Not unlike the Ray court, we have held that "[t]he major element of due process delay is 'substantial prejudice' caused by the delay," and "[t]he showing of prejudice must be based on 'concrete, practical considerations, rather than vague speculation unsupported by facts.' " Dean, 148 Vt. at 514 (citation omitted); see also Ray, 578 F.3d at 200 ("To prove a due process violation as a result of a sentencing delay, the prejudice claimed by the defendant, absent extraordinary circumstances, must be substantial and demonstrable."). In any event, even if we were to adopt the two-part test set forth in Ray, we would find no error in the court's denial of defendant's motion to dismiss on "speedy sentencing" grounds. As set forth below, there was justifiable reason for the delay and defendant identifies no substantial prejudice.

The record indicates the following. After defendant was convicted in January 2011, the court ordered a pre-sentence investigation report (PSI). Defendant was in federal custody at the time, and defense counsel requested that the sentencing hearing be continued until June 1, 2011 "or post Federal sentencing." The State agreed to this approach. The motion was granted, and the state sentencing hearing was set for June 2, 2011.

On May 31, 2011, defendant received a federal sentence of eighteen months to serve followed by two years of supervision. The parties appeared at the June 2 state sentencing hearing, but defendant was not sentenced because no PSI had been filed. The probation officer explained that she had not been authorized to travel to New York, where defendant was housed, to conduct the PSI and defendant had refused to participate over the telephone because he would not be provided a confidential telephone line. The court reset the sentencing hearing for July 2011, and issued a writ to secure defendant's presence. Defendant did not appear at the July hearing, however, because federal marshals would not transport him. To ensure defendant's presence in the future, the court issued a "hold without bail" order.

In October 2011, defendant filed a pro se request to be brought before the Vermont courts for the final disposition of his case. He asked that sentencing be held within 180 days of his request, which would be April 2012. Defendant indicated that he was serving a federal sentence

in Kentucky. The court directed the State to explain what it intended to do with defendant's case. The State responded that defendant was scheduled to be released from federal prison on February 25, 2012 and it requested that sentencing be set after that date. A sentencing hearing was scheduled for March 23, 2012.

The day before the hearing, defense counsel moved to dismiss "in the interests of justice," asserting that defendant had been denied a speedy sentencing. The court denied the motion on the record. It found that sentencing had been delayed because defendant was in federal custody and federal authorities had not produced defendant as ordered. The court also found that defendant had not been prejudiced by the delay because he had been in actual custody of the federal government during the time.

We agree with the trial court. As set forth above, the relatively short delay here was caused largely by factors outside the control of the prosecution and the court. The delay was not purposeful. See Ray, 578 F.3d at 200 (observing that "deliberate delay to hamper the defense weighs heavily against the prosecution," while "more neutral reasons such as negligence or overcrowded courts weigh less heavily" although they should be nevertheless considered (quotation omitted)). Additionally, defendant fails to show that he suffered any substantial prejudice. With the exception of one month, he was in federal custody during the time leading to his sentencing. His contention that he might have received a state sentence that ran concurrent to his federal sentence is pure speculation, largely belied by the trial court's statement to defense counsel at the June 2011 hearing that it was opposed to concurrent sentences for different offenses. Defendant has pursued his right to appeal, and he identifies no concrete prejudice that he suffered from the delay in pursuing this right. The fact that defendant has been living with his family during the brief interlude between his federal imprisonment and the state sentencing does not demonstrate that he will suffer substantial prejudice due to the sentencing delay. This case is nothing like Ray on which defendant relies. In Ray, the defendant waited fifteen years to be resentenced, and the court found that she would suffer severe prejudice from having to spend six months in a halfway house after she had successfully rebuilt her life for fifteen years. Ray, 578 F.3d at 202. The Ray court emphasized the narrowness of its holding and the unique situation that led to its conclusion. Id. No such unusual and compelling circumstances are present here.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Brian L. Burgess, Associate Justice

4